HOBBY SHOPS, INC. AND HOBBY RANCH HOUSE, INC. v.
MICHAEL D. DRUDY AND ROBERT D. DRUDY.

[No. 3-173A9. Filed October 16, 1974.]

*William F. McNagny, John F. Lyons,* of Fort Wayne, for appellants.

*Robert J. Maley,* of Richmond, *James L. Larson,* of Fort Wayne, for appellees.

GARRARD, J.—In April 1962, Michael Drudy, a thirteen year old newsboy for the *Indianapolis Star,* won a trip to Detroit for his efforts in securing new subscribers. A large number of boys made the trip on busses provided by the *Star.* By prearrangement, the evening they were returning home, they stopped at defendant's restaurant in Fort Wayne. After eating, Drudy and a companion left the restaurant and were running across the parking lot to their bus when Drudy ran into a cable some 3 to 4 feet above the ground level. The cable was used, along with a curbing, to separate parking lanes. Drudy was knocked to the ground and injured. He was eventually operated on to relieve an epidural hematoma. Two weeks thereafter a subdural hematoma was discovered, and there was a second operation. This latter operation left a hole in his skull approximately three inches in diameter. Medical testimony indicated the risks and limitations this has placed upon him.

Drudy filed suit for damages, and his father sued for medical expenses and loss of services. The actions were consolidated, tried to a jury, and resulted in an award of $35,000 to Drudy and $6,500 to his father.

This appeal asserts insufficiency of the evidence, failure to sustain defendant's motion for directed verdict, that the damages are excessive, that the court improperly excluded cer-

tain evidence and erroneously refused to give certain instructions tendered by defendants. The appellees have requested a 10% increase in the award pursuant to AP. 15 (F).

The motion to correct errors asserts improper refusal by the court to permit questions to "plaintiffs' witnesses, including the mother of Michael Drudy" regarding any monetary settlement made by the *Star* with the Drudys related to a skull fracture received by Drudy in another later accident. It is urged this evidence was proper in trying to determine the injury and damage attributable to the injuries sued on and as an exception to the collateral source rule to rebut Mrs. Drudy's statement that the reason Michael did not undergo a third operation was "they" could not afford it.

The assignment sufficiently presents the question regarding Mrs. Drudy's testimony. However, it is insufficient to preserve error regarding questions, if any, propounded to other witnesses on this point. Indeed, we assume there were none, since none are pointed out in defendant's thorough brief.

The record reveals that at the close of her direct examination, Mrs. Drudy was permitted to testify to her reasons why a third operation, which would have installed a plate over the hole in Michael's head, was not performed. She stated several reasons which included:

"We couldn't afford it. We simply could not afford another one. If it had been a matter of it had to be, we would have. There was no guarantee that this plate was the cure all so we three came to the conclusion ourself (sic!)."

Cross examination then opened with:

"Q: You've said that you couldn't afford to have this repair. Did you ever make any request of the Indianapolis Star to take care of it?"

We note this was the *only* question asked on the subject. Drudy's prompt objection was properly sustained.

Defendant asserts that under *Jackson* v. *Beard* (1970), 146 Ind. App. 382, 255 N.E.2d 837, Drudy opened the door for evidence of money received in the settlement of a later dif-

ferent accident in which he received a skull fracture. In *Jackson* the court held that evidence regarding plaintiff's becoming eligible for and drawing regular Social Security retirement benefits should have been allowed where plaintiff introduced considerable evidence that the profitability of his farming operation substantially decreased in the year he became 65 because he could no longer do the work due to his injury sustained two years earlier. The evidence was admissible, not as a matter of collateral income that mitigated damage, but on the issue created by plaintiff as to why he cut back his farming.

No such relevant issue is presented by settlement monies that may have been received by Drudy for a different injury. Defendant asserts that plaintiff tried to create such an issue through the testimony of Dr. Gibson, which included the question of whether he thought the skull fracture was related to the previous injury involved in this suit. The doctor's testimony, however, was that the injuries were not related, and the record supports the inference that Drudy was simply bringing this out and making it clear to the jury, since the X-rays taken of plaintiff showed the fracture line.

Even so, defendant was entitled to impeach Mrs. Drudy if she was not being candid. Defendant also correctly points out that since the question was asked upon cross-examination, an offer of proof was unnecessary. However, to create harmful error, a responsive answer to the question asked was whether Mrs. Drudy ever requested the *Star* "to take care of it" (the operation). Any responsive answer would have been immaterial and prejudicial, and would not have directly impeached her prior testimony. The objection was properly sustained.

Defendant also urges that its manager should have been permitted to testify to conversations with other newsboys after the accident. The basis for the assertion lies in the direct examination of the manager. He was asked whether

there was a request for an aspirin tablet; whether he knew anything about that. He answered:

"I remember some kids coming in and they got a—something to drink and they told the cashier they wanted some aspirins; some kids was running and jumped over the cable, and one fell and he may be hurt, and they want to give him some aspirins. I overheard that, working in the lobby . . ."

At that juncture plaintiffs' counsel interposed and moved to strike the answer. The court announced it was sustaining the objection. It struck the testimony and admonished the jury to disregard it. The answer was properly excludable as hearsay. That the court ruled without requiring plaintiff to state the basis for his objection is of no moment since the sustaining of an objection will be upheld if there is any basis upon which the ruling is correct. *Maier* v. *Bd. of Public Works* (1898), 151 Ind. 197, 51 N.E. 233; *Sheets* v. *Garringer* (1963), 135 Ind. App. 488, 194 N.E.2d 757.

The next errors asserted refer to the court's refusal to give instructions numbered 8, 9, 12, 13, 14, 18, 19, 20, 21 and 22 tendered by defendant.

Defendant's tendered instruction No. 8 sought to instruct the jury that if they found that immediately before the accident the newsboys were permitted by their supervisors to run and play in the parking lot, and if defendant did not have reasonable opportunity to learn of such activity and control it, then the defendant was not negligent.

The instruction is misleading for it restricts the jury's ability to find negligence to foreseeability of the *specific* evidentiary circumstances preceding plaintiff's injury. The risk to be perceived was not necessarily that a group of newsboys would be permitted by their supervisors to "run and play" on the parking lot, but rather that "running and playing" was likely to occur.

More importantly for the purposes of this appeal, the matters sought to be covered by the instruction were ade-

quately presented to the jury by the final instructions given by the court. These properly covered the necessity of finding that defendant was negligent, defined the duty to an invitee, and instructed the jury that if they found the parking lot as maintained was reasonably safe for patrons when used in a reasonable manner by the patrons, then defendant was not negligent in the maintenance and operation of the parking lot.

Under such circumstances, even if the tendered instruction were correct, no harmful error resulted from the failure to give it. *Indianapolis Transit System* v. *Williams* (1971), 148 Ind. App. 649, 269 N.E.2d 543.

Tendered instruction No. 9 sought to instruct the jury specifically about plaintiff's duty to use ordinary care to discover obstructions in the parking lot. The matters presented were adequately covered by the instructions given by the court on contributory negligence.

The other eight instructions the defendant urges were improperly refused commence with defendant's tendered instruction No. 12.

Indiana Rules of Procedure, Trial Rule 51 specifically delineates the procedures applicable to instructions. TR. 51 (D) provides:

> "Each party shall be entitled to tender *no more than ten* [10] requested instructions to be given to the jury; however, the court in its discretion *for good cause shown* may fix a greater number. Each tendered instruction shall be confined to one [1] relevant legal principle. *No party shall be entitled to predicate error upon the refusal of a trial court to give any tendered instruction in excess of the number fixed by the rule or the number fixed by the court order, whichever is greater.*" (Emphasis supplied)

We believe the rule to be both clear and sound. Its purpose on limitation is three-fold: (a) too many instructions tend to confuse rather than enlighten the jury, *Pfisterer* v. *Key* (1941), 218 Ind. 521, 33 N.E.2d 330; (b) the sheer number of tendered instructions will at

times make it physically impossible for opposing attorneys or the court to perform their duty in examining tendered instructions, *White* v. *Evansville A.L.H. Assoc.* (1965), 247 Ind. 69, 210 N.E.2d 845; and (c) this in turn makes the likelihood of error nearly inevitable, *Emry* v. *Beaver* (1922), 192 Ind. 471, 137 N.E. 55.

We further believe that adherence to the rule will prompt the salutory, if perhaps grudging, effect of promoting accurate general instructions on the applicable law, thereby increasing the likelihood of jury comprehension and retention.

On the other hand, for good cause shown, as where there remains a relevant point upon which the jury has been neither specifically or generally instructed, the rule's proviso permits relief.[1]

Defendant urges two points in opposition to application of the rule. First it is said that since the trial was upon a consolidation of two cases, the permissible number should automatically increase to twenty. We disagree. Consolidation *per se,* if it implies anything, implies a commonness of at least some of the issues. No doubt, in some circumstances the divergent issues may create good cause for application to the court to increase the permissible tender to more than ten. However, no such application was made by defendant nor was such an order entered by the court.

Secondly, defendant urges the rule should not constitute a bar because the plaintiff did not assert an objection to the excess number. This ignores the mandate of the rule. When defendant tendered its twenty-two requested instructions, the court could, and in fact did, give several of those proffered beyond the first ten. In so doing,

---

1. We note with approval the modern tendency of our trial courts to tender to the parties instructions which the court intends to give on basic propositions such as burden of proof, credibility determinations, and what is meant by negligence, etc. Where this is done, it becomes much easier for counsel to focus their attention on the special instructions peculiar to the specific case.

those given simply became instructions by the court. However, the mandate provides that no error may be predicated upon the *refusal* to give any tendered instruction in excess of the ten provided by TR. 51(D) or the number fixed by the court, *whichever is greater.* Since the court was not asked and in fact did not fix a greater number, no error may be predicated on the refusal to give defendant's instructions numbered 12, 13, 14, 18, 19, 20, 21 and 22.

It is next urged that (a) the court erred in failing to direct a verdict; (b) the verdict is not sustained by the evidence; and (c) the verdict is contrary to law.

It is well established that the duty of reasonable care owed by a host to a business invitee includes the obligation to make the premises reasonably safe. Included is the obligation to exercise reasonable care to discover possibly dangerous conditions and take reasonable precautions to protect the invitee. Ordinarily, the determination of whether this has been done is for the jury. *Hammond* v. *Allegretti* (1974), 262 Ind. 82, 311 N.E.2d 821; *Broadhurst* v. *Davis* (1970), 146 Ind. App. 329, 255 N.E.2d 544.

In addition, where it is anticipated that children will be among those utilizing the invitation, the host is bound to consider their age, propensities and experience in his exercise of care to make the premises safe. *Rouch* v. *Bisig* (1970), 147 Ind. App. 142, 258 N.E.2d 883.

Defendant, however, asserts that here the question was not properly for the jury because the injury was not foreseeable in the exercise of ordinary care. Thus, it is argued that in order to have anticipated injury to Drudy, the defendant would have had to foresee that the bus driver would have parked in that portion of the lot; that he would park across the painted lines indicating that automobiles were to park diagonally; and that those in charge of the trip would not supervise the activities of the boys after they had eaten.

This argument misconceives the nature of foreseeability necessary to a negligence action. Foreseeability does not mean

that the precise sequence of events or exact consequences which were encountered should have been anticipated. Rather the question is whether defendant should have foreseen in the abstract, in a general way, the injurious consequences of its act. *Bessler* v. *Laughlin* (1907), 168 Ind. 38, 79 N.E. 1033; *Broadstreet* v. *Hall* (1907), 168 Ind. 192, 80 N.E. 145. This is the general rule. *St. Clair* v. *Douvas* (1959), 21 Ill. App. 2d 444, 158 N.E.2d 642; *Whiteside* v. *Rooks* (D.C. N.Y. 1961), 197 F.Supp. 313; *Ginnelly* v. *Continental Paper Co.* (1959), 57 N.J. Super. 480, 155 A.2d 154; *Karlsen* v. *Jack* (1964), 80 Nev. 201, 391 P.2d 319. Thus, it was sufficient if defendant should have foreseen the likelihood of its child customers running into the cable and injuring themselves.

Of course, our review of the evidence is limited to that favoring the judgment. This includes photographs showing the cable, and statements that no warning, either verbal or by signs, was given cautioning against the danger. Drudy testified that he did not see the cable before running into it. In addition, two other boys testified to being unable to detect the cable that night and that they too had run into it and been knocked down. A third boy ducked and missed the wire because he saw Drudy run into it. This was sufficient to support a finding of negligence. That the store manager denied knowledge of any such accidents prior to the night in question is not determinative as a matter of law. In fact, the jury may not have credited his statement since his version of what he was told of the incidents on the night in question is at odds with evidence given by plaintiffs' witnesses.

Defendant further urges that even if negligent, its negligence was not the proximate cause of the injury. It asserts the proximate cause to have been either the negligence of the *Star* officials and the bus driver, or Drudy's own contributory negligence.

As to Drudy, it argues that he passed under the cable to get to the restaurant. Therefore, he possessed equal knowl-

edge of the peril and under the doctrine of *Clark* v. *City of Huntington* (1920), 74 Ind. App. 437, 127 N.E. 301, reh. den. 74 Ind. App. 437, 128 N.E. 453, its failure to warn Drudy could not be considered the proximate cause of the injury, for by definition Drudy thereby failed to use reasonable care. This argument must fail because it ignores the standard of care applicable to minors. Knowledge and appreciation of the peril are essential elements of contributory negligence. *Rouch* v. *Bisig, supra.* Thus it is that the standard of care which plaintiff was bound to exercise to remain free of contributory negligence was reasonable care *for a person of like age, intelligence and experience.* The very core of the rule is its recognition that those of immature years, depending upon their age, experience and intelligence, may or may not appreciate dangers, either in existing conditions or their own actions, which would be eschewed by the abstract reasonable man. Knowledge of the wire's existence did not as a matter of law place plaintiff on equal footing with the defendant. The issue was properly for the jury.

The defendant likewise fails in contending that the actions of the supervisors or the bus driver *must* be deemed the intervening independent cause of Drudy's injury. Such intervening acts break the chain of causation only if they could not have been reasonably foreseen by the original negligent actor. *Stauffer* v. *Ely* (1971), 149 Ind. App. 93, 270 N.E.2d 889. It was reasonably foreseeable that children would run on the parking lot in the presence or absence of adult supervision. At least the jury could so find. They could also have found that in the absence of any directions for parking the busses, and where the marked parking spaces would not accommodate the length of a bus, it was foreseeable that busses using the lot would be likely to park in the area laned for parking but across the car spaces in order that the busses would not protrude into the stream of traffic. Thus, the jury could have found that defendant's negligence was a proximate cause of the injury.

It is finally urged that the damages were excessive. There was evidence of the immediate and long term effects of the injury to Drudy. There was also evidence of the loss of services occasioned to his parents. We cannot say the award here made is so shocking as to impress this court as being motivated by passion, prejudice and partiality. Therefore, the award must stand. *Bonek* v. *Plain* (1972), 153 Ind. App. 516, 288 N.E.2d 185.

We decline to award the ten percent assessment of damages sought by appellees pursuant to Rule AP. 15(F). The substance of the appeal was neither frivolous nor in bad faith. *Annee* v. *State* (1971), 256 Ind. 686, 274 N.E.2d 260.

The judgment is affirmed.

Hoffman, C.J. and Staton, J., concur.

NOTE.—Reported at 317 N.E.2d 473.