**J.C. PENNEY COMPANY, INC., Montgomery Elevator Co., and Early Elevator Corp., Appellant-Defendant,**

v.

**Ruth E. WESOLEK and Paul J. Wesolek, Appellee-Plaintiff.**

**No. 3–683A191.**

Court of Appeals of Indiana, Third District.

April 16, 1984.

Edward N. Kalamaros, Thomas Cohen, Edward N. Kalamaros & Associates, P.C., South Bend, for appellant-defendant.

Gerald A. Kamm, Daniel A. Manion, Doran, Manion, Boynton, Kamm & Esmont, South Bend, for appellee-plaintiff.

STATON, Presiding Judge.

Ruth Wesolek fell on a down escalator in a J.C. Penney (Penney) department store when the handrails stopped moving in sequence with the steps. Ruth sued Penney and Early Elevator Company (Early), the company responsible for the installation and the maintenance of Penney's escalators, for their negligence. She sued the manufacturer of the escalator, Montgomery Elevator Company (Montgomery), in strict tort liability. Early successfully moved for judgment on the evidence at the

close of Ruth's case; the jury returned a verdict for Penney and Montgomery. The trial court agreed with Ruth's contention in her motion to correct errors that its instructions on contributory negligence and the duty owed to a licensee were unsupported by the evidence; it granted a new trial. On appeal, Penney contends that the evidence supports the instructions.

I.

### Instruction on Contributory Negligence

■ If any of the trial court's stated reasons for its decision to grant a new trial are proper, or, if any unstated theory requires a new trial we must affirm the decision. *Easley v. Williams* (1975), 163 Ind.App. 38, 40–41, 321 N.E.2d 752, 756. The trial court's instruction on contributory negligence reads as follows:

"Contributory negligence is a defense in this case as to plaintiff's claim of negligence against the defendant, Penney's. Contributory negligence is any negligence on the part of the plaintiff, Ruth E. Wesolek which would proximately contribute to her alleged injuries and damages. So in this case, if you should find by a fair preponderance of all the evidence that Ruth E. Wesolek, was negligent in any manner, however slight, which proximately contributed to her alleged injuries, then plaintiffs, Ruth E. Wesolek and Paul J. Wesolek, cannot recover from the defendant Penney's."

For the following reasons, the trial court determined that this instruction was erroneous:

"Giving defendant's Instruction No. 7 was erroneous and invited speculation and unfounded inferences by the jury in that the evidence indicated no act or failure to act by the plaintiff that would have established any basis for the defense of contributory negligence. Since the court cannot gauge the effectiveness of this erroneous instruction, a new trial is therefore necessary."

We agree with the trial court that the evidence was insufficient to support an in-

struction on contributory negligence. The facts pertinent to the issue of contributory negligence are as follows: Ruth, a sixty-two year old woman suffering from arthritis in both legs, was riding Penney's down escalator when it malfunctioned. She was approximately four steps from the top of the escalator when the right handrail stopped moving in sequence with the steps throwing her onto her left side. In an attempt to regain her balance, Ruth reached for the left handrail which had also stopped moving. She clung to both handrails, her hands sliding down them as the steps carried her feet downward. Approximately three quarters of the way down, the handrails started moving and Ruth was able to stand and walk off the escalator.

Penney's allegation of contributory negligence was supported only by its contention that a noise which Ruth heard when she originally gripped the handrail and the handrail's sudden jerking motions should have warned her to release her grip; her failure to heed these warnings by releasing her grip contributed to her fall. Penney further challenged Ruth's reaction to the malfunction with evidence that on the day Ruth fell approximately 500–800 people had descended the same escalator without incident or complaint.

■ Even though Penney's burden to prove contributory negligence does not require it to introduce all of the evidence to support its theory, the evidence must show that Ruth did not act as a reasonable person would have acted in the same position. *Hi-Speed Auto Wash, Inc. v. Simeri* (1976), 169 Ind.App. 116, 118, 346 N.E.2d 607, 608. Additionally, entitlement to an instruction on contributory negligence requires some evidence in the record to support it. *Dukes GMC, Inc. v. Erskine* (1983), Ind.App., 447 N.E.2d 1118, 1123. Penneys failed to carry its burden; the evidence does not support an instruction on contributory negligence.

The evidence does not show that Ruth acted unreasonably. Ruth testified that the noise and the jerking motions from the handrail occurred after she was approxi-

mately four steps from the top of the escalator. Even though no other incidents were reported by other passengers who rode the escalator on the day Ruth fell, the evidence did not show that those passengers dealt with a similar handrail malfunction during the course of their ride. Consequently, the evidence does not support Penney's defense theory of contributory negligence. Therefore, Penney was not entitled to the instruction. The trial court was correct that the jury could have found contributory negligence only by speculation.

## II.

### Instruction on Duty Owed to a Licensee

The following facts gave rise to the instruction on the duty owed to a licensee: On the day she fell Ruth was employed in the drapery department of Sears Department Store, a business competitor of Penney. Ruth's supervisor had requested that she inspect the display techniques used in Penney's drapery department. While on her supper hour, Ruth went to Penney's. She testified that before she went to see the display, she made a purchase. After seeing the drapery display, Ruth stepped onto the down escalator with which Penney had been having trouble and fell during the course of her ride. On cross-examination, Penney attempted to impeach Ruth's credibility by questioning her testimony about her purchase because no receipt was introduced nor did any other witness see her with a package. This purchase was important because under Indiana law Ruth's status as a licensee or an invitee in a department store determines the duty of protection Penney would have owed to Ruth.

Based on the above facts, the following instruction described the duty owed to a licensee:

"A licensee takes the premises of the occupant as ... she finds it ... The only duty an occupant owes to a licensee is to refrain from willfully or wantonly injuring ... her. To hold one guilty of 'willful' or 'wanton' conduct, it must be shown that the occupant was conscious of his conduct and with knowledge of existing conditions that injury could probably result, and with reckless indifference to consequences the occupant consciously and intentionally did some wrongful act or omitted some duty which produced the injuries."

For the following reasons the trial court agreed with Ruth that this instruction was erroneous:

"The court further finds upon reflection and consideration, that giving of defendant J.C. Penney's Instruction No. 4 was also erroneous in that it also invited speculation and probably caused confusion in the minds of the jury. The evidence clearly indicates that the plaintiff entered the defendant J.C. Penney store to make a purchase and also to look at the drapery department. This evidence, coupled with the basic physical layout of the store, which invites entrance to the entire mall by passing through the defendant J.C. Penney store, is an implied and almost an express invitation for the mall buyers to visit their store. The fact that impulse buyers constitute a significant portion of the retail sales volume, supports the contention that a store has an economic interest and benefit in encouraging traffic through their store. A customer is clearly an invitee as a matter of law and the improvidently granted instruction could only cause confusion."

The trial court's reason for finding this instruction erroneous is incorrect as a matter of law. However, the above instruction is erroneous because its inadequacy almost assuredly invited speculation.

■ As stated above, we will affirm the trial court's decision to grant a new trial if required by either a stated or an unstated reason or theory. Under Indiana law the evidence supported an instruction on the duty owed to a licensee and an invitee which contained the facts necessary to determine whether at the time she fell Ruth was a licensee or an invitee. Accordingly, the trial court properly granted a new trial.

Penney correctly contends that in Indiana the extent of the public department

store's duty to protect from injury persons on its premises requires a determination of whether the person was at the time of the injury a licensee or an invitee. It asserts that because the evidence raised a question of fact about Ruth's status, the instruction as given was correct. As stated above, we disagree.

■ The status of a person on the land of another determines the duty of care which that person can expect from the owner. *Mullins v. Easton* (1978), 176 Ind. App. 590, 593, 376 N.E.2d 1178, 1181. The determination of status depends in part upon the purpose of the visit and in part upon the purpose for which the owner has held his land open. *Id.* Therefore, the facts of the particular case determines the visitor's status and the owner's corresponding duty.

■ In Indiana a person who legally enters the premises of another for his own convenience, curiosity, or entertainment is a licensee. *Mullins, supra* at 594, 376 N.E.2d at 1181; *Fort Wayne National Bank v. Doctor* (1971), 149 Ind.App. 365, 370, 272 N.E.2d 876, 880. The corresponding duty is that the owner must warn the visitor of any known concealed, dangerous conditions. *Mullins, supra* 176 Ind.App. at 594, 376 N.E.2d at 1181.[1] Otherwise, the owner has no legal duty to keep his land free from pitfalls. *Id.*

■ To qualify as an invitee, a visitor's purpose for using the owner's premises must correspond to the owner's purposes for allowing others on his land. *Mullins, supra* at 593, 95, 376 N.E.2d at 1181. *Standard Oil Company of Indiana v. Scoville* (1961), 132 Ind.App. 521, 525–27, 175 N.E.2d 711, 713. If a visitor's purpose is related to the owner's pecuniary interest, the owner has a duty to exercise reasonable care to make the premises safe for the visitor. *Id.* Alternatively, a visitor is an invitee if the owner encourages entry to further his own purpose. *Id.* From the encouragement arises the assertion that reasonable care has been exercised to make the premises safe for the visitor who entered for that purpose. *Id.*

Applying the law, Ruth's status as a licensee or as an invitee depended in part upon her purpose for her presence in Penney at the time of her fall and in part upon Penney's purpose for holding its store open to the public. *Mullins, supra* 176 Ind.App. at 593–95, 376 N.E.2d at 1181; *Standard Oil, supra* 132 Ind.App. at 525–27, 175 N.E.2d at 713–14. Consequently, whether Ruth made a purchase in Penney's before her fall is crucial to the determination of her status at the time of her fall. If, at the time of her fall Ruth had made a purchase which would have benefitted Penney and which corresponded to Penney's purpose for allowing entry upon its premises, then she would have been an invitee requiring Penney to make the premises safe against its own negligence. However, if her purpose was merely to carry out the request of her employer to compare displays so that she was in Penney's for her own convenience or curiosity which would neither have benefitted Penney nor corresponded to Penney's purpose for allowing entry, she would have been a licensee requiring only a warning of a known dangerous concealed defect. *See Standard Oil, supra* at 527–28, 175 N.E.2d at 714.

Whether Ruth made a purchase in Penney's is a question of material fact. If she did so, then her status was that of an invitee. If not, her status was that of a licensee. Therefore, the instruction on the duty owed to a licensee was inadequate for its omission of pertinent facts. The decision to grant a new trial is affirmed.

Affirmed.

HOFFMAN, J., concurs.

GARRARD, J., concurs in Result with Opinion.

---

1. Although Ruth argues that this definition of care owed to a licensee was erroneously omitted from the instruction, she did not preserve this contention for appeal. However, we note that it is a question of fact for the jury to decide whether or not the trouble Penneys was experiencing with its escalator constituted a known concealed dangerous defect.

GARRARD, Judge, concurring.

I concur with the majority concerning issue I.

Accordingly, it is not necessary to decide issue II, although the propriety of an instruction concerning invitee-licensee status is likely to recur on retrial. I believe such an instruction correctly stating the law is appropriate if the facts in evidence establish a genuine issue as to Wesolek's status at the time. I do not agree with the majority's assertion that whether Wesolek made a purchase before her fall is "crucial to the determination," although it is certainly significant evidence.

I therefore concur in the result reached.