**Jean PERSINGER, as Special Administratrix of the Estate of Lionel Persinger, Deceased, Plaintiff,**

v.

**MARATHON PETROLEUM COMPANY, Defendant.**

**No. IP 83–1915C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Nov. 18, 1988.

Michael W. Holland, Holland & Holland, Morris Klapper, Klapper & Isaac, Indianapolis, Ind., for plaintiff.

Michael R. Conner, Jack M. Freedman, Barnes & Thornburg, Indianapolis, Ind., for defendant.

## ORDER ON DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT

McKINNEY, District Judge.

This cause comes before the Court on the second motion for summary judgment of Marathon Petroleum Company, the plaintiff's response in opposition to summary judgment, and Marathon's reply thereto. Neither party has requested oral argument, and the Court, in accordance with Local Rule 11, does not find it either necessary or worthwhile in this instance. After considering the briefs and the record developed in this case, and for the reasons set forth below, the Court now GRANTS the defendant's second motion for summary judgment and ENTERS JUDGMENT for the defendant and against the plaintiff accordingly.

### I. *Background of the Case:*

This wrongful death action began back on August 23, 1983, when plaintiff filed her Complaint in the Marion County Superior Court. On petition of defendant Marathon, the action was removed to this Court in December 1983. The plaintiff's amended complaint charges Marathon with. negligence in the death of Lionel Persinger, who was found dead on August 25, 1981, in a petroleum storage tank owned and operated by Marathon.

After completion of the initial discovery in this action, defendant Marathon filed its first motion for summary judgment on February 28, 1985. Marathon argued that Persinger had been contributorily negligent and incurred the risk of entering the petroleum tank as a matter of law. On November 7, 1987, on the record developed in this action at that time, this Court denied Marathon's first motion for summary judgment on the grounds that it could not be concluded as a matter of law that Persinger had incurred any risk. This Court reasoned that it could be inferred from the record "that when Persinger entered the tank he

intended to be in it for only a short period of time and therefore believed he would be safe without breathing apparatus."

Since November of last year, the record in this case has been further developed through discovery. Moreover, the standards governing summary judgment practice that were clarified by the Supreme Court in 1986 have been interpreted by the Seventh Circuit to encourage disposition of insufficient claims under Rule 56 where appropriate. In light of both these changes, Marathon filed its second motion for summary judgment on September 15, 1988, arguing additional grounds for summary judgment. Specifically: (1) that Marathon did not owe any duty to Persinger because of his superior knowledge of the hazards which caused his death; (2) that even if a duty existed, there is no evidence that his death was caused by any negligence of Marathon; (3) that Persinger was contributorily negligent as a matter of law; and, (4) that Persinger incurred the risk of his death as a matter of law.

In her response to the defendant's motion, plaintiff first argues that Marathon has misconstrued the law in Indiana with respect to the duty owed to business invitees. Second, plaintiff points to the recent deposition of Tim Greene, a Marathon employee, and an inspection of the storage tank conducted by Samuel McCan depicting internal defects in the tank in an attempt to show that there are genuine issues of fact whether Marathon was negligent. Finally, plaintiff argues that there are questions of fact as to the issues of contributory negligence and assumption of risk.

## II. *Undisputed Facts:*

The undisputed facts as set forth in the parties' pleadings and exhibits are as follows:

Plaintiff, a domiciliary of Indiana, is the widow of Lionel Persinger and the Special Administratrix of his estate. Defendant Marathon is a corporation incorporated under the laws of Ohio with its principal place of business in Ohio as well. As of August 25, 1981, Lionel Persinger was 58 years old and was the founder, owner, director, and operator of National Piping Contractors,

Inc. National Piping was incorporated in 1963 and for eighteen years prior to Persinger's death performed contract work at petroleum products terminals for Marathon and other oil companies such as Shell Oil, Texaco, Phillips Petroleum, Chevron, and others.

On August 25, 1981, Persinger was found dead in a large enclosed petroleum products storage tank (Tank T–6) owned and operated by Marathon at its terminal located at 1304 Olin Avenue in Speedway, Indiana. Persinger's body was resting on a circular floating roof that rests on top of the stored petroleum product. There was no breathing apparatus or retrieval equipment found on or near Persinger's body, nor was any "stand-by man" present. Persinger's death resulted from inhalation of toxic fumes.

At the time of Persinger's death, Marathon had plans to clean the interior of Tank T–6. Because of the dangers involved in this line of work, Marathon usually hired expert independent contractors such as National Piping to perform such work. On the date of his death, Persinger's company was not under any written contract with respect to the tank in which he died, although his company was under an unrelated contract to install two small gasoline storage tanks elsewhere on Marathon's premises. The work under this contract would not have involved working inside tanks that had previously held petroleum products or that were filled with petroleum products. Mr. Persinger did not go to the Marathon terminal on the date of his death for the purpose of performing work inside any tanks. Persinger did not have any equipment or tools with him at the terminal that day. Persinger went to Marathon to discuss the contract concerning the small gasoline storage tanks and then planned to return home to pick up his luggage before departing for Champaign, Illinois, later in the day. Persinger was the only agent or employee from National Piping present at the Marathon terminal that day.

At some point on August 25, 1981, Tim P. Greene, a field engineer of Marathon,

requested that Persinger raise the legs on the floating roof inside Tank T-6. It is a common practice to adjust the legs on floating roofs up or down, and this was often done so that the tank could be cleaned. In order to raise the legs on a floating roof there must be a certain amount of product in the tank so that the roof floats upon the product. Generally the lowering or raising of the legs requires the use of a hammer and a pair of pliers. On the morning of Persinger's death, Greene and Persinger were together for some period of time. Persinger agreed to raise the roof, but was not going to do this until the following day. Greene advised Persinger to notify him prior to entering the tank, and to use breathing apparatus, a retrieval line, and a standby man when he went into the tank. Persinger did not notify Greene prior to entering the tank. Greene has no recollection of telling Persinger what was contained in Tank T-6. At the time of Persinger's death, the floating roof of Tank T-6 was resting on approximately 20,000 gallons of petroleum product, comprised of approximately 95% gasoline and 5% diesel fuels.

In August, 1981, it was Tim Greene's responsibility to convey safety instructions and provide direction to contractors. Greene considered himself to be knowledgeable with regard to the dangers involved in working in enclosed petroleum storage tanks. Prior to requesting that Persinger go down into the tank, Greene himself had never before asked a person to go down into such a storage tank. Other Marathon employees, including William Pierce, had been inside such storage tanks on other occasions. On the date of Persinger's death, Greene knew that the atmosphere in Tank T-6 could be asphyxiating, toxic, and flammable. Greene also knew that the oxygen level inside the tank could be below a safe working level. In August 1981, Greene was unaware of any written company rules concerning safety apparatus or precautions for persons going into enclosed storage tanks.

At some time before or around midday on August 25, 1981, Persinger asked Nancy Thompson, then a summer employee working in maintenance for Marathon, if he could borrow a ladder that belonged to Marathon. Ms. Thompson gave Persinger the ladder which he requested. Ms. Thompson did not know why Persinger wanted the ladder. At some time between noon and 3:00 P.M. on August 25, 1981, Persinger climbed down into the floating roof inside Tank T-6. No witnesses report seeing Persinger descend into Tank T-6.

Around 3:00 P.M. on August 25, 1981, Willard Morris, a former maintenance employee of Marathon, observed that Persinger's truck was still parked in the pipeline manifold area of the terminal with its door still open. Morris and Ms. Thompson then began to look for Persinger. Upon noticing that the hatch on top of Tank T-6 was open, Morris and Thompson climbed on top of Tank T-6 and looked in through the east opening of the roof where they discovered Persinger lying on the floating roof inside the tank. Persinger was not wearing breathing apparatus nor was there any breathing equipment located near the tank or in his truck. There is no evidence that Persinger asked anyone to serve as a standby man or otherwise help him, nor is there any evidence that such a standby man or assistant was ever present.

At the time of his death, Persinger was an experienced independent contractor who had worked in and about petroleum products storage tanks for Marathon and other companies for a number of years. Persinger had raised the legs of floating roofs inside enclosed tanks at Marathon's Muncie, Indiana, terminal. He had performed two contracts which required him to connect the loading rack's vapor recovery system and oil/water separator system to Tank T-6 in Speedway, the tank in which he died. Persinger had knowledge of the type of petroleum products which Tank T-6 might contain. Persinger had cleaned petroleum product tanks, performed tank inspections, and done repair work inside of such tanks prior to his death.

Several of the contracts under which Persinger performed work for Marathon warned Persinger of the hazards and/or referred him to reference materials that outlined safe procedures for working in

such tanks. A contract dated December 4, 1980, between National Piping and Marathon concerned work Persinger's company was to do on Tank 55–5 at Marathon's Speedway terminal. This contract stated that the contractor was to "Make tank safe for entry" and "Assure tank vapor-free and lead-free or provide proper protective clothing and equipment for personnel." Another December 4, 1980, contract concerning Tank 10–6 contained the same language.

Persinger had been told by other individuals of the dangers of entering an enclosed tank without breathing apparatus. Gary Justak, an independent contractor who often worked with Persinger's company, was working with Persinger at Marathon's Champaign terminal in the summer of 1981. Justak's employees were cleaning the tank and were wearing breathing equipment. Justak observed Persinger entering the same enclosed tank that day without breathing apparatus, Justak suggested that Persinger use proper breathing apparatus, but Persinger entered the tank in Champaign without breathing apparatus. Gene Wirey, a Marathon employee who worked on numerous occasions with Persinger, reminded Persinger on a couple of occasions that he should use breathing apparatus when entering enclosed storage tanks. On August 25, 1981, Tank T–6 contained a diamond shaped warning sticker located on the manway at eye level when standing on the ground. The sticker stated, "THIS TANK HAS CONTAINED LEADED GASOLINE—*WARNING*—DO NOT ENTER WITHOUT FRESH AIR MASK, SPECIAL CLOTHING, RUBBER GLOVES AND RUBBER BOOTS."

Persinger had been seen on prior occasions by Marathon employees and others entering storage tanks both with breathing apparatus and without such equipment. William Pierce, an employee of Marathon, had personally entered tanks and has never worn breathing equipment. National Piping owned breathing equipment suitable for use by Persinger. It was National Piping's regular practice to utilize breathing equipment, retrieval lines, and a standby man when performing work in enclosed, in-service petroleum product storage tanks. It is common knowledge among those who work in the industry that one should not enter an enclosed petroleum storage tank without using fresh air breathing equipment nor without a standby-man nearby.

Lionel Persinger, Jr. ("Lionel, Jr."), Persinger's son, worked with his father for National Piping beginning in the early 1970's. Lionel, Jr. learned about safety procedures for performing work in enclosed, in service petroleum product storage tanks from his father. It was Lionel, Jr.'s practice to use breathing equipment, retrieval lines, and standby men while working in enclosed petroleum products storage tanks. Of the some 15 to 20 times that Lionel, Jr. has entered such storage tanks, he has worn breathing equipment on all but one occasion. Lionel, Jr. is sure that his father was aware of the dangers of asphyxiation accompanied with working in enclosed storage tanks. Lionel, Jr. states that it was his father's practice to use breathing apparatus and other safety equipment while in enclosed storage tanks; Lionel, Jr. had no knowledge of his father entering other enclosed tanks without breathing apparatus and other safety equipment. Lionel, Jr. is surprised that his father was not using safety equipment at the time of his death. James Persinger, Persinger's other son, was also aware of the dangers of entering enclosed tanks without breathing apparatus.

The use of such breathing apparatus and other safety equipment was required by OSHA and by the standards established by the American Petroleum Institute, the National Institute for Occupational Safety and Health, and the American National Standards Institute. In August of 1981, there were in effect the following OSHA regulations which were officially published in the Code of Federal Regulations and were binding on Persinger's company under I.C. 22–8–1.1–13.1:

29 C.F.R. § 1910.134 *Respiratory Protection.*

(a)(2) Respirators shall be provided by the employer when such equipment is

necessary to protect the health of the employee.

(b)(8) Appropriate surveillance of work area conditions and degree of employee exposure or stress shall be maintained.

(e)(3) Written procedures shall be prepared covering safe use of respirators in dangerous atmospheres that might be encountered in normal operations or in emergencies. Personnel shall be familiar with these procedures and the available respirators.

(e)(3)(iii) Persons using air line respirators in atmospheres immediately hazardous to life or health shall be equipped with safety harnesses and safety lines for lifting or removing persons from hazardous atmospheres or other and equivalent provisions for the rescue of persons from hazardous atmospheres shall be used. A standby man or men with suitable self-contained breathing apparatus shall be at the nearest fresh air base for emergency rescue.

29 C.F.R. § 1910.134 (1981).

Subsequent to Persinger's death, National Piping was cited by the Indiana Division of Labor's Department of IOSHA for safety violations of these regulations arising out of Persinger's death, including failure to use proper respiratory equipment, failure to use a standby man, and failure to test the atmosphere in the tank prior to entry. National Piping was fined $1,000 for these violations and paid the fine without contest.

III. *Summary Judgment Standards:*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Further, Rule 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

While these rules were formerly viewed with some hostility by the federal courts and were sparingly used in disposing of insufficient claims or defenses, *see, e.g., Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962), the Supreme Court has recently instructed the district courts to follow the mandatory aspects of Rule 56 and enter summary judgment where appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The *Celotex* Court wrote:

> Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the rule, prior to trial, that the claims and defenses have no factual basis.

*Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555.

The Seventh Circuit has noted and readily embraced the change in attitude towards Rule 56. For instance, in affirming an entry of summary judgment, one panel of the court wrote, "When it is plain that a trial could have but one outcome, summary judgment is properly granted to spare the parties and the court the time, the bother, the expense, the tedium, the pain, and the uncertainties of trial." *Spellman v. Commissioner*, 845 F.2d 148, 152 (7th Cir.1988). Similarly, in *Collins v. Associated Pathologists, Ltd.*, 844 F.2d 473 (7th Cir.1988), another panel recently expounded on the proper application of Rule 56 in light of the Supreme Court's new directives. In *Collins*, the court first noted that "the Supreme Court [has] made clear that, con-

trary to the emphasis of some prior precedent, the use of summary judgment is not only permitted but encouraged in certain circumstances...." 844 F.2d at 475. After citing to the trilogy of Supreme Court summary judgment cases, the Seventh Circuit explained the change in attitude towards Rule 56 at length, writing:

> This language [from the summary judgment cases] indicates that a summary judgment motion is like a trial motion for a directed verdict and that 'genuine' allows some quantitative determination of the sufficiency of the evidence. The trial court still cannot resolve factual disputes that could go to a jury at trial, but weak factual claims can be weeded out through summary judgment motions. The existence of a triable issue is no longer sufficient to survive a motion for summary judgment. Instead, the triable issue must be evaluated in its factual context, which suggests that the test for summary judgment is whether sufficient evidence exists in the pre-trial record to allow the non-moving party to survive a motion for directed verdict.

*Collins*, 844 F.2d at 476 (citation omitted).

Finally, it is clear that a properly supported motion for summary judgment "cannot be defeated merely by an opposing party's incantation of lack of credibility over a movant's supporting affidavit." *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir.1988). An unsupported assertion that a movant's affidavit should not be taken as true for purposes of summary judgment does nothing to create a genuine issue of material fact. *Id.*

This Court, then, must evaluate this case to determine whether reasonable jurors could find for the plaintiff on the evidence contained within the record. When it is clear that the plaintiff could not prevail, the Court must follow the mandate of Rule 56 and enter judgment accordingly.

### IV. *Conclusions of Law:*

After reviewing the undisputed facts, the Court now makes the following conclusions of law:

### A. Jurisdiction and the law to be applied:

This matter is properly before the Court on the basis of removal and diversity jurisdiction under 28 U.S.C. § 1344. In this instance, the acts or omissions and the personal injury occurred in Indiana. Accordingly, the substantive law of Indiana is looked to in adjudicating the parties' rights. At the time of the accident herein, Indiana had not yet adopted its Comparative Fault Act, *Ind.Code Ann.* § 34–4–33–3 (effective January 1, 1985), so the law of contributory negligence applies instead.

### B. Issues of Duty and Negligence:

■ In Indiana, the status of a person on the land of another determines the duty of care to which that person is entitled from the owner. *J.C. Penney Co., Inc. v. Wesolek*, 461 N.E.2d 1149, 1153 (Ind.App.1984). The determination of the visitor's status depends in part on the purpose of the visit and the purpose for which the owner holds its land open; therefore the facts of each case determine the visitor's status and the owner's corresponding duty. *J.C. Penney Co., Inc. v. Wesolek*, 461 N.E.2d 1149, 1153 (Ind.App.1984). Indiana recognizes three categories of visitors: trespassers, licensees, and invitees. *Clem v. United States*, 601 F.Supp. 835, 841 (N.D.Ind.1985).

An invitee is a person who goes upon the land of another at the express or implied invitation of the owner or occupant either to transact business or for the mutual benefit of the invitee and the owner. *Clem*, 601 F.Supp. 835, 841. A licensee is one who enters the premises of another for his own convenience, curiosity, or entertainment. *Id.* at 842. The only duty owed a licensee is to refrain from willfully or wantonly injuring him or acting in a way which would increase the licensee's peril. *Id.* The somewhat higher duty owed to an invitee is to keep the property in a reasonably safe condition.

In this case, Lionel, as an employee of independent contractor Natonal Piping, is assumed by both parties to have been an invitee at the time he entered Tank T–6. Indeed, in Indiana an employee of an independent contractor coming upon another's

land to perform work under a contract is generally considered an invitee. *Louisville Cement Co. v. Mumaw*, 448 N.E.2d 1219, 1221 (Ind.App.1983); *Downham v. Wagner*, 408 N.E.2d 606, 610 (Ind.App.1980); *Wingett v. Teledyne Industries, Inc.*, 479 N.E.2d 51, 54 (Ind.1985). Taking all inferences in favor of the plaintiff for purposes of this motion, the Court will treat Persinger as such in this instance.

It should be noted, however, that the matter may not be as clear as the parties contemplate, for the facts strongly suggest that Persinger entered the tank on August 25, 1981, without the permission of Marathon to enter on that date. All the evidence in the record, including sworn testimony from Mrs. Persinger, Tim Greene, and Carlos Anderson, points to a finding that Persinger was not going to do the work in the storage tank until the following day. It is a basic tenet of premises liability law that the scope of an invitation does not extend beyond its terms. *See, e.g., Hogge v. United States*, 354 F.Supp. 429 (E.D.Va.1972) (If employee of independent contractor is at a place beyond the invitation or where the invitee is not reasonably expected to go in the performance of his work, as to such an area he is a mere licensee). Although the issue of the scope of the invitation has not been briefed and is unnecessary for the resolution of this motion, it could well be possible in this case to rule that Persinger was a licensee and not an invitee upon entering the tank. Indeed plaintiff implicitly makes this argument in order to illustrate an unrelated point, writing, "[Persinger] was not under a contract to perform the work inside Tank T–6 and, from all indications, he was inside the tank because he was doing a favor for Marathon." For purposes of this motion, however, the Court will, of course, take all inferences in favor of the plaintiff and assume that Persinger enjoyed the highest status of being an invitee when he entered the tank.

The precise duty owed to an invitee by the landowner depends upon the facts of the case, and is a matter of law to be determined by the court. *Wingett v. Teledyne Industries, Inc.*, 479 N.E.2d 51, 54 (Ind.1985); *Department of Natural Resources v. Morgan*, 432 N.E.2d 59, 62 (Ind. App.1982). In general, a landowner has a duty to exercise reasonable care to keep its property in a reasonably safe condition for business invitees, including employees of independent contractors. *Wingett v. Teledyne Industries, Inc.*, 479 N.E.2d 51, 54 (Ind.1985); *Louisville Cement Co. v. Mumaw*, 448 N.E.2d 1219, 1221 (Ind.App. 1983). A landowner owes an invitee the duty to warn of latent or concealed perils such as are not known to the person injured. The landowner must exercise reasonable care to discover possibly dangerous conditions and take reasonable precautions to protect the invitee. *Hobby Shops, Inc. v. Drudy*, 161 Ind.App. 699, 317 N.E.2d 473, 478 (1974); *Louisville Cement Co. v. Mumaw*, 448 N.E.2d 1219, 1221 (Ind.App. 1983).

A landowner is not, however, an insurer of the safety of invitees, but has a duty to make inspections from time to time as ordinary prudent men would make in a reasonable effort to discover and remedy defects which make premises unsafe. Before a landowner can be held liable to an invitee under premises liability, it must be shown that the landowner had actual or constructive knowledge of the danger. *Bearman v. University of Notre Dame*, 453 N.E.2d 1196, (Ind.App.1983); *Broadhurst v. Davis*, 146 Ind.App. 329, 255 N.E.2d 544, 545 (1970). The basis of any premises liability of the landowner to the employee of the independent contractor must be predicated upon the superior knowledge of the landowner of the dangers of the premises. *Wingett v. Teledyne Industries, Inc.*, 479 N.E.2d 51, 54 (Ind.1985); *Curl v. Bethlehem Steel Corp.*, 181 Ind.App. 132, 390 N.E.2d 709, 712 (1979).[1]

---

**1.** As one commentator has demonstrated, there is often some confusion in Indiana about the precise duty owed to an employee of an independent contractor. "The basic source of error in construing this duty lies in attempts to impose greater liability on the landowner ... than actually exists by combining three independent propositions of law: the business invitee doctrine, the 'safe place to work' doctrine, and the independent contractor liability doctrine."

If it is determined by the court as a matter of law that the landowner owed a duty in this case to the plaintiff, it is then ordinarily a question of fact as to whether the landowner met its duty and was thus not negligent. *Bearman v. University of Notre Dame*, 453 N.E.2d 1196, (Ind.App. 1983); *Hobby Shops, Inc., v. Drudy*, 161 Ind.App. 699, 317 N.E.2d 473, 478 (1974). If a duty was owed to the plaintiff in this case, it could have been discharged by remedying any latent defects or warning of such defects. *Louisville Cement Co., v. Mumaw*, 448 N.E.2d 1219, 1221 (Ind.App. 1983); *Downham v. Wagner*, 408 N.E.2d 606, 610 (Ind.App.1980.)

Here, the Court finds as a matter of law that Marathon did not breach any duty to the decedent in connection with the hazard that caused his death. Indiana case law makes it clear that a landowner has no duty to eliminate dangerous conditions on the property if the business invitee has knowledge of such dangers. *See, e.g., Cummings v. Hoosier Marine Properties*, 363 N.E.2d 1266 (Ind.App.1977); *Hoosier Cardinal Corporation v. Brizius*, 136 Ind. App. 363, 199 N.E.2d 481 (1964); *Restatement (Second) of Torts*, § 343A, comment e at 219 (1965). The undisputed facts in this case reveal that the hazard in this tragic accident was asphyxiation from petroleum vapors, regardless of the density of such vapor as affected by any defects in the storage tank.[2] All evidence, including the testimony of the decedent's family and those who work in this dangerous field, as well as the standards mandated by OSHA and the industry watchdogs, confirms that the hazard of inhaling vapors is well known. The decedent had been warned of the danger of such vapors on various occasions, he instructed his workers as to these hazards, and he had entered other storage tanks that contained such vapors. The vapors and dangers stemming therefrom are not latent; to the contrary all facts disclose that they are readily apparent. It simply cannot be said that Marathon had superior knowledge to Persinger whose business it was to work in such an environment.

The applicable law and undisputed facts mandate summary judgment:

> [T]he landowner's duty of care does not extend to dangers which are so obvious and apparent that the invitee may reasonably be expected to discover such dangers himself. If the dangerous condition is observed or should have been observed by the invitee, or if the invitee has been warned of such condition, the landowner's duty to exercise reasonably care for the protection of that invitee has been met; and the landowner cannot be held liable for injuries to the invitee resulting from that condition.

Smith, *Landowners' Liability to an Employee of an Independent Contractor*, 19 Val.U.L.Rev. 633 (1984). *See also Howard v. H.J. Ricks Construction Co.*, 509 N.E.2d 201, 205 (1987), *trans den.* And, as the Seventh Circuit has written, "An owner [in Indiana] is not liable for negligent injuries to an employee of an independent contrac-

---

Smith, *Landowners' Liability to an Employee of an Independent Contractor*, 19 Val.U.L.Rev. 633 (1984). The first doctrine concerning business invitees is invoked in this case; the latter two are not. The safe place to work doctrine applies only in the master-servant relationship, *Id.* at 639; *Jones v. Indianapolis Power & Light*, 158 Ind.App. 676, 304 N.E.2d 337, 45–46 (1973), and it is undisputed that such a relationship was not present between Persinger and Marathon. The third doctrine of independent contractor liability, which holds that a landowner is not liable to the employee of an independent contractor for the torts *of the independent contractor* absent one of five extenuating circumstances, *see Denneau v. Indiana and Michigan Electric*, 150 Ind. App. 615, 277 N.E.2d 8 (1971); 19 Val.U.L.Rev. at 641–646, is not present here because the plaintiff charges the landowner, not the inde-pendent contractor, with direct negligence. Thus the only authority relevant to the duty owed by Marathon to Persinger is that addressing the business invitee doctrine.

**2.** Although the plaintiff's affidavit of Samuel McCan concerning the 1983 inspection of Tank T–6 and defects in the seal was filed at the eleventh hour in this proceeding, the Court has considered the facts stated therein as true in ruling on this motion. Assuming the seal was defective, the issues of duty, as well as contributory negligence discussed below, remain the same. The intensity of the vapors is not the issue; plaintiff has simply been unable to offer any evidence refuting the decedent's superior knowledge of the hazards of such vapors whatever their level.

tor unless he actively participated in the negligent act causing the injury or unless he failed to warn of hidden dangers on the premises of which he had or ought to have had knowledge *and of which the employee had not." Nagler v. United States Steel Corp.,* 486 F.2d 794, 797 (7th Cir.1973) (emphasis added). Because Persinger, the independent contractor hired to perform this dangerous work, had at least equal or superior knowledge of the hazards, Marathon cannot be held liable here.

### C. Persinger's Contributory Negligence:

■ Although the Court has found as a matter of law that there is no basis of imposing liability on Marathon for its acts or omissions, the Court will nonetheless address the issues of contributory negligence and assumption of risk to demonstrate further that plaintiff cannot prevail under these facts.

Under the law of contributory negligence as it existed in Indiana at the time of the accident, an act or omission of the plaintiff constituting negligence that contributed to his injury operates to defeat recovery from the defendant. *Clem v. United States,* 601 F.Supp. 835 (N.D.Ind.1985); *Hall v. Terre Haute Electric,* 38 Ind.App. 43, 76 N.E. 334 (1906). Contributory negligence is defined as conduct on the part of the plaintiff that falls below the objective standard of reasonable care to which he should conform. *Havert v. Caldwell,* 452 N.E.2d 154 (Ind.1983); *Hundt v. LaCrosse Grain Co.,* 446 N.E.2d 327 (Ind.1983). A plaintiff must exercise that degree of care that an ordinary reasonable man would exercise in like or similar circumstances. *Memorial Hospital of South Bend v. Scott,* 261 Ind. 27, 300 N.E.2d 50 (1973). The issue of the plaintiff's contributory negligence is determined and governed by the same standards, tests, and rules as those employed for determining the negligence of the defendant. *Public Service Co. of Indiana v. Gibbs,* 460 N.E.2d 992 (Ind.App.1984).

A plaintiff chargeable with dangers inherent in his conduct equal to or surpassing that of alleged tortfeasors is guilty of contributory negligence as a matter of law. *Dreibelbis v. Bennett,* 162 Ind.App. 414, 319 N.E.2d 634 (1974). If the plaintiff was actually aware of or should have appreciated the risks involved but proceeded to act nonetheless, his conduct is negligent. *Thompson v. Public Service Co.,* 499 N.E. 2d 788 (Ind.App.1986). In short, a person is required to make reasonable use of his faculties and senses to discover dangers and conditions to which he is or might be exposed. *Howard v. H.J. Ricks Construction Co.,* 509 N.E.2d 201 (Ind.App.1987); *Hunsberger v. Wyman,* 247 Ind. 369, 216 N.E.2d 345 (1966); *Ashland Pipeline v. Indiana Bell,* 505 N.E.2d 483 (Ind.App. 1987) ("the means of knowledge combined with the duty to utilize that means equate with knowledge itself"). And, because there are no degrees of negligence in Indiana, a plaintiff who is guilty of *any* negligence on his own behalf, however slight it may be, is barred from any recovery. *Huey v. Milligan,* 242 Ind. 93, 175 N.E.2d 698 (1961).

Applying these objective standards to the record in this case, it is clear, as a matter of law, that Lionel Persinger was contributorily negligent when he entered Tank T–6 without any safety and breathing gear, without informing any Marathon employees of his intent to enter the tank, or without securing a standby man to rescue him in the event he slipped on the ladder, became asphyxiated, or otherwise encountered difficulties inherent to such work. Whether Persinger believed he was only going to be in the tank a short time and therefore thought that he would be safe without any equipment is of no import to objective issues of contributory negligence, for there is no evidence from which it can be objectively concluded that it is reasonable to enter such a petroleum storage tank *for any period of time* without any of the standard safety precautions.

■ The evidence establishes that it is common knowledge in the industry that such tanks are dangerous. Breathing gear and standby men are standard safety measures, ones that were required by OSHA, prescribed by the industry watchdogs, and commonly used by Persinger's company and other companies. There is no dispute

that Persinger instructed his employees, including his son, about the use of such equipment, nor is it disputed that Persinger's company had purchased and had available this safety gear. Nor is there any evidence suggesting that it is ever reasonable to enter a petroleum storage tank alone without any equipment. Again, the level or intensity of such vapors is not the issue, for Persinger objectively should have known that the storage tank would contain asphyxiating vapors; the fact that there might have been more vapors than he might have anticipated does not make his own acts any less negligent. There is no evidence in the record to indicate that Persinger had any reason to believe that this tank was any less risky than the ordinary tank.

■ The plaintiff has tried diligently to show the existence of a genuine issue of material fact to preclude summary judgment. These efforts, however, fail for various reasons. For instance, plaintiff argues that there is a question of fact as to whether Persinger was entering the tank to actually clean the tank or merely inspect it. Indeed, this is a question which will, unfortunately, never be known. However, the fact in question is not material so as to affect this ruling. Whether he entered to clean or inspect is irrelevant; the undisputed facts are that he descended into the tank, a tank that he should have known would be dangerous. He did this without any safety equipment or standby man. The purpose and anticipated length of his entry into the tank is thus of no import with respect to objective contributory negligence.

■ Plaintiff, after attempting to rely on Tim Greene's testimony regarding the storage tank, broadly asserts that Greene's testimony that he warned Persinger of the need for safety equipment "is open to serious question." Plaintiff fails, however, to come forth with any affidavits, depositions, or other admissible evidence to in any way support this assertion. It is axiomatic that a "motion for summary judgment *cannot* be defeated merely by an opposing party's incantation of lack of credibility over a movant's supporting affidavit." *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir.1988) (emphasis added); *Haase v. Webster*, 807 F.2d 208 (D.C.Cir.1986) (failure to offer evidence contradicting movant's affidavits rendered summary judgment proper). The mere mention to a district court that a party vigorously disputes statements made in declarations in support of a motion for summary judgment is not sufficient to call into question the contentions made by the opposing party. *Finzer v. Barry*, 798 F.2d 1450 (D.C.Cir.1986), *aff'd in part, rev'd on other grounds, Boos v. Barry*, —— U.S. ——, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988). And, it is not the province of a district court on summary judgment to balance or ignore evidence submitted by a party unless that evidence, as a matter of law, is without basis. *Hand v. Central Transport*, 779 F.2d 8 (6th Cir.1985).

This case is thus like *Steinle v. Warren*, 765 F.2d 95 (7th Cir.1985), in which the Seventh Circuit affirmed an entry of summary judgment. In *Stienle*, the defendants in a civil rights action produced affidavits categorically denying any involvement in an alleged occurrence. The plaintiff failed to contradict the sworn affidavits with any admissible evidence but offered only conclusory allegations. The court affirmed the entry of summary judgment on the grounds that the plaintiff had failed to raise any issue of fact by merely trying to call into question the veracity of the movants' affidavits. *Id.* at 99–100.

■ Plaintiff also argues that the fact that Persinger and others have gone into such tanks on prior occasions precludes summary judgment. This evidence, however, does nothing to contradict the undisputed evidence and necessary finding that it is simply objectively unreasonably to enter one of these tanks for any reason without standby men and safety equipment, neither of which was present here. First, there is no showing that these individuals were alone and without standby men on these prior occasions as Persinger was in this case. Additionally, the fact that Persinger and others failed to exercise reasonable care in the past does not make Per-

singer's actions on the date of his death any less unreasonable.

Reasonable minds would have to find that Lionel Peringer was at least 1% negligent in this case; if they did not, this Court would be required to direct a verdict accordingly. Because the directed verdict and summary judgment standards have been equated by the Supreme Court and Seventh Circuit, *see Anderson, Celotex, Matsushita,* and *Collins, supra,* the Court will follow the mandate of Rule 56 and enter judgment accordingly.

### D. Persinger's Incurred Risk:

■ In Indiana, the doctrine of assumption of risk is an affirmative defense in contract or tort. In contract situations, the Indiana courts speak of "assumed risk", whereas in tort cases such as this, the doctrine of "incurred risk" is applicable. *Rouch v. Bisig,* 147 Ind.App. 142, 258 N.E. 2d 883 (1970). Incurred risk differs from the defense of contributory negligence in that contributory negligence occurs when a plaintiff unreasonably fails to recognize an obvious risk or danger; incurred risk occurs when a plaintiff voluntarily accepts a known risk or danger. *Bridgewater v. Economy Engineering Co.,* 486 N.E.2d 484, 489 (Ind.1985). The former involves an objective, reasonable man test, the latter a mixed subjective and objective test. *Petroski v. Northern Indiana Public Service,* 171 Ind.App. 14, 354 N.E.2d 736, 744–45 (1976). Where one voluntarily and knowingly places himself in an environment known by him to be dangerous his right to recover may be defeated by the doctrine of assumption of risk. *Meadowlark Farms, Inc. v. Warken,* 176 Ind.App. 437, 376 N.E.2d 122, 132 (1978).

"There are factual situations when conduct may be characterized as either contributory negligence or incurred risk." *Petroski,* 354 N.E.2d at 745. Incurred risk involves "a mental state of venturousness on the part of the actor ... and demands a subjective analysis into the actor's actual knowledge and voluntary acceptance of the risk." *Power v. Brodie,* 460 N.E.2d 1241, 1243 (Ind.App.1984). The "essence of incurred risk is the conscious, deliberate, and intentional embarkation upon a course of conduct with knowledge of the circumstances." *Id.* Incurred risk contemplates acceptance of a specific risk of which the plaintiff has actual knowledge. *Id.* Because, unlike issues of contributory negligence involving the reasonable man standard, the doctrine of incurred risk involves the subjective elements, it is generally a question of fact for the jury. *Id.* at 1242, n. 2.

In this case there can be no doubt but that Persinger should have known of the dangers of entering the tank without safety equipment or standby men such that contributory negligence is established as a matter of law. The issue of incurred risk, however, is not proven as a matter of law because it is still possible (however remotely) to infer that Persinger failed, no matter how unreasonably, to subjectively grasp the dangers at hand. Thus, this Court's prior order denying summary judgment on the grounds that it could be inferred that Persinger believed he could be safe without breathing apparatus is still proper with respect to the subjective issue of incurred risk.

In summary, there are no genuine issues of material fact and summary judgment is mandated for the defendant and against the defendant on the grounds that no duty was owed to Persinger in regards to the hazards that caused his tragic death. Even if some duty was owed and Marathon was negligent, Persinger, though he may not have subjectively incurred the risk, was contributorily negligent as a matter of law in that his standard of care for himself fell below that objectively required of reasonable men.

Accordingly, JUDGMENT IS HEREBY ENTERED FOR THE DEFENDANT AND AGAINST THE PLAINTIFF.

IT IS SO ORDERED.