Richey Wayne **PEAVLER**, Appellant
(Plaintiff Below),

v.

**BOARD OF COMMISSIONERS OF MONROE COUNTY**, Appellee
(Defendant Below).

No. 72A01–8910–CV–395.

Court of Appeals of Indiana,
First District.

Aug. 6, 1990.

James R. Fisher, Robert B. Clemens, Ice Miller Donadio & Ryan, Indianapolis, for appellant.

Dale W. Eikenberry, Katherine L. Shelby, Wooden McLaughlin & Sterner, Indianapolis, Thomas J. Lantz, Montgomery Elsner & Pardieck, Seymour, for appellee.

ROBERTSON, Judge.

Richey Wayne Peavler appeals a jury verdict in favor of the defendant below, Board of Commissioners of Monroe County (County).

We affirm.

Peavler sustained serious injury on the morning of July 18, 1982 when the driver of the automobile in which he was a passenger was unable to negotiate a curve on Hinkle Road in northern Monroe County and struck a tree at a high rate of speed. Peavler brought this action against the County on April 4, 1983, alleging that the County's negligence in failing to post or maintain certain warning and/or speed limit signs was the proximate cause of his injuries. Peavler tried the case before a jury in Jackson County which returned a verdict for the County. After an appeal to the Indiana Supreme Court resulted in a new trial, *Peavler v. Board of Commissioners of Monroe County* (1988), Ind., 528 N.E.2d 40, a Scott County jury returned a verdict, again, for the County.

Three of the five issues raised by Peavler in this appeal concern the doctrine of contributory negligence and are treated together. The other two alleged errors involve the refusal of a tendered jury instruction and the admission of expert witness testimony. In addition, the County presents by cross-appeal the single question of whether the trial court erred in denying the County summary judgment on the basis of governmental immunity.

## I.

### Contributory Negligence

Peavler argues that the trial court improperly permitted the issue of contributory negligence to go to the jury in the absence of evidence warranting jury consideration. Peavler raised the issue by motion for summary judgment, in his objections to the County's tendered instruction on contributory negligence and in his motion for judgment on the evidence.

The cornerstone of Peavler's argument is *Goodhart v. Board of Commissioners* (1989), Ind.App., 533 N.E.2d 605, *trans. denied.* There, as here, the plaintiff, a passenger in a vehicle which was being driven at excessive speeds, sued the county alleging negligence in the design, construction, maintenance, and signing of the road. This district found reversible error in the giving of a contributory negligence instruction because of an absence of evidence indicating the plaintiff "had any basis un-

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

der an objective standard as a reasonable person to know of the lack of warning signs, the missing stop sign, or the dip in the road." 533 N.E.2d at 605.

Drawing upon *Goodhart* and language in other appellate decisions, Peavler insists that to bar recovery, the County must show he had actual or constructive knowledge of the County's negligence in signing or maintaining signs on the curve, and that his own conduct was a proximate cause of the accident. In the absence of such proof, Peavler contends the County can succeed with its contributory negligence defense only if it establishes that Peavler incurred the risk of injury. On this point, Peavler maintains the evidence is insufficient as a matter of law, as the County failed to demonstrate he had actual knowledge of the specific risk created by the County's negligence. If, however, the evidence was adequate to raise a question of contributory negligence, the jury should have been instructed, as set forth in the Restatement (Second) of Torts § 466a (1977), that to preclude recovery it needed to find Peavler acted intentionally and unreasonably at the time he got into the vehicle. Peavler's formulation of the law and our decision in *Goodhart* deviates in several significant respects from what we perceive to be the true state of the law of contributory negligence in Indiana.

▮▮ Contributory negligence is conduct on the part of the plaintiff, contributing as a legal cause to the harm he has suffered, which falls below the standard to which he is required to conform for his own protection. Restatement (Second) of Torts § 463 (1977) *cited in Memorial Hospital of South Bend, Inc. v. Scott* (1973), 261 Ind. 27, 300 N.E.2d 50, 53; *Havert v. Caldwell* (1983), Ind., 452 N.E.2d 154. A plaintiff must exercise that degree of care which an ordinarily reasonable person would exercise in like or similar circumstances. *Get-N-Go v. Markins* (1990), Ind., 550 N.E.2d 748, 751; *Scott*, 300 N.E.2d at 53. In addition, the plaintiff's negligence must either be the proximate cause of the injury of which complaint is made, or proximately contribute thereto. *Huey v. Milligan*

(1961), 242 Ind. 93, 105, 175 N.E.2d 698. Since the question of contributory negligence does not arise except in a case where it has been shown that the defendant was guilty of negligence which was the proximate cause of injury, a plaintiff's negligence need not be the sole proximate cause of the injury but only a concurring or co-operating proximate cause. *Cousins v. Glassburn* (1940), 216 Ind. 431, 438–9, 24 N.E.2d 1013.

▮▮ There are Indiana decisions which suggest that the plaintiff's conduct must be the proximate cause of the "accident," "collision," or "injury producing occurrence." The general rule as set forth above is not so narrowly circumscribed. As the Restatement indicates, the causal relation exists between the plaintiff's negligence and the *harm or injury.*

The fact that the plaintiff has failed to exercise reasonable care for his own safety does not bar recovery unless his harm results from one of the hazards which make his conduct negligent.

Restatement (Second) of Torts § 468 (1977).

▮▮ Generally, the same test of causation is applied in determining whether the conduct of the plaintiff proximately contributed to the injury as is applied in determining whether the conduct of the defendant is the proximate cause of injury. *Huey*, 242 Ind. at 96, 175 N.E.2d 698. *See also, Kroger Co. v. Haun* (1978), 177 Ind. App. 403, 379 N.E.2d 1004, 1010. A negligent act or omission is the proximate cause of injury if the injury is a natural and probable consequence which, in light of the circumstances, should reasonably have been foreseen or anticipated. *Havert*, 452 N.E.2d at 158. However,

[f]oreseeability does not mean that the precise sequence of events or exact consequences which were encountered should have been anticipated. Rather the question is whether the [actor] should have foreseen in the abstract, in a general way, the injurious consequences of [his] act.

*Hobby Shops, Inc. v. Drudy* (1974), 161 Ind.App. 699, 317 N.E.2d 473, 478.

Accordingly, Peavler need not have foreseen the manner in which harm occurred or the specific acts of negligence alleged of the County. It is sufficient if the injury resulting from Peavler's failure to exercise ordinary care is such as was usual and therefore might have been expected. In the language of the Restatement, the harm results from one of the hazards which make his conduct negligent. If, by riding with Brent Owen, Peavler failed to exercise reasonable care for his own safety and thereby exposed himself to risk of harm brought about at least in part by Brent Owen's negligent driving, his injury results from the very hazard which makes his conduct unreasonable. It is a direct and proximate result of his own behavior and bars recovery, regardless of and assuming the concurring negligence of the County.

A case cited by the County, *Henderson v. Hicks* (1984), Ind.App., 469 N.E.2d 46, illustrates this point. Mrs. Henderson, a passenger in a vehicle driven by her husband, sustained injury when the Henderson vehicle collided with a vehicle driven by Hicks. The court on appeal found error in the giving of an incurred risk instruction on the basis the record was devoid of any evidence Mrs. Henderson had actual knowledge of the specific risk created by the conduct of the driver of the second vehicle, the defendant Hicks. Notably, however, in evaluating the propriety of the instruction as a statement of the law of contributory negligence, the court looked to the risk associated with *Mrs. Henderson's conduct* in riding in her husband's vehicle, not the specific hazard created by the negligence of Mr. Hicks. If no relationship existed under the circumstances between Mr. Henderson's conduct and the injury to Mrs. Henderson, none existed between Mrs. Henderson's conduct and her injury.

The County did not set up incurred risk as a defense, choosing instead to argue that Richey Peavler failed to exercise care in riding with Brent Owen when he knew or should have known that Brent Owen's ability to drive safely was impaired by excessive alcohol consumption and that Peavler's own negligence proximately contributed to his injuries. This defense depends upon a jury determination that Brent Owen's conduct was at least a concurring proximate cause of Peavler's injuries.

To be sure, the evidence favorable to the jury's verdict warrants an instruction on this theory. The record discloses that on the evening of July 17, 1982, Peavler, then 18 years old, arrived at the apartment of his friend, Brad Owen, with a case of beer. Two additional cases of beer were waiting at Brad's apartment. Brad Owen and Peavler discussed a trip to Griffy Lake to go "skinny-dippin'." Subsequently, others arrived, including Brad's older brother, Brent Owen. The group drank beer, listened to music and played cards until about 2:30 a.m. when Brent, Brad and Peavler decided to go swim. They did not take any beer with them to the lake.

Peavler rode to the lake with Brent Owen. Although Peavler did not observe any indicia of impairment in Brent's physical condition or driving, Peavler admits that he (Peavler) was intoxicated, having consumed about 13–14 beers. Peavler, who is nearsighted, did not wear his glasses.

At the lake, Brent got into a scuffle with a stranger, LeGroux. An observer, Jacquard, reported that the fight was one-sided; Brent was not able to defend himself. He slurred his words and never made any defensive or aggressive moves. Peavler finished swimming just as the fight broke up. As they were leaving, Brent backed into LeGroux's car. Brent says he caught a tire in a rut, gave the car more gas, and rammed into LeGroux's car. LeGroux said Brent had to come 35–40 feet down the hill to hit his car, which was parked on the opposite side of the road. In any event, LeGroux chased the Owen vehicle up the hill.

Lake Griffy lies in a valley between two hills. The roads leading to and from Griffy are steep with multiple bends and turns. An accident reconstructionist estimated Brent's speed at 52 m.p.h. when he started braking for the last curve. Brent was unable to execute the turn and collided with a

tree. When the police arrived, Brent was nude from the waist down.

An expert on the effects of alcohol testified that at even low concentrations of alcohol in the blood, an individual's ability to judge distance, speed and space are measurably impaired. As the concentration of alcohol in the blood increases, an individual becomes willing to accept risks which he normally would not accept. All mental functions, including depth perception are affected. It takes longer for the brain to recognize and sort multiple stimuli and decide whether and how to respond. Therefore, while a person specifically looking for a warning sign might recognize the sign, he still could miss or ignore other equally important stimuli necessary to perform a particular function. A person, like Brent, with a BAC of .186% is affected substantially in his ability to react to more than one stimulus.

 Consequently, even though Peavler reported he did not observe any errors of judgment or problems with Brent Owen's driving before they left the lake, the jury could find his ability to assess the safety of the situation had been diminished by his own alcohol consumption and his inability to see well. The record contains testimony from a disinterested witness that Brent Owen was manifesting outward signs of impairment at the lake. The jury thus had an objective basis for evaluating the County's assertion that Peavler failed to exercise reasonable care, that Brent Owen's negligence was a proximate cause of the collision and that Peavler's own negligence proximately contributed to his injuries.

Hence, the trial court did not commit reversible error by submitting the issue of contributory negligence to the jury, in denying Peavler's motion for judgment on the evidence or in giving the County's tendered instruction three, which permitted the jury to consider Peavler's alcohol consumption as evidence of contributory negligence, as contributory negligence was properly at issue and the jury could conclude that the County's negligence, if any, was not the sole proximate cause of Peavler's injuries.

 We conclude the court also properly rejected Peavler's tendered instruction eight which purported to state the doctrine of incurred risk. The County did not raise incurred risk as a defense and, as Peavler argues, the evidence was insufficient as a matter of law to permit the conclusion that Peavler had actual knowledge of the hazardous condition created by the County.

 Lastly, we reject Peavler's assertion of prejudicial error in allowing the County to argue that by putting himself in Brent Owen's automobile and going to the lake, Peavler was contributorily negligent. While technically, the remark is a misstatement of the law in that it makes no reference to the aspect of cause, it is clear from the context in which it appears that counsel was not attempting to avoid proving cause, but to point out the negligence in Peavler's actions even before he arrived at the lake. Negligence and contributory negligence are to be determined upon the basis of all the material facts and circumstances. *Phillips v. Croy* (1977), 173 Ind.App. 401, 363 N.E.2d 1283, 1285, *trans. denied.* Counsel did not leave the jury with the misimpression that it could find Peavler contributorily negligent solely on the basis of his actions several hours earlier. The misstatement was rectified and no harm could have come to Peavler.

## II.

### Tendered Instruction

 Peavler maintains he was entitled to an instruction stating the presumption applicable in strict product liability cases, that a legally sufficient warning would have been heeded. The practical effect of such a presumption in strict liability jurisprudence is to modify the cause-in-fact test by shifting the burden of going forward with proof of causation from the user or consumer to the defendant manufacturer, thereby alleviating proof problems for the plaintiff who otherwise would be forced to prove by conjecture that he would not have suffered injury but for the absence of an adequate warning. *Nissen Trampoline Co. v. Terre Haute First National Bank*

(1975), Ind.App., 332 N.E.2d 820, 826–7, *reversed on procedural grounds* (1976), 265 Ind. 457, 358 N.E.2d 974.

 Presumptions of this type are not regarded as evidence but rules of law which guide the order of proof and establish the bounds of a prima facie case. Once the duty of going forward with evidence has been discharged, the presumption is *functus officio* and has no proper place in jury instructions. *Kaiser v. Happel* (1941), 219 Ind. 28, 32, 36 N.E.2d 784; *State Farm Mutual Automobile Ins. Co. v. Shuman* (1977), 175 Ind.App. 186, 370 N.E.2d 941. Therefore, assuming a presumption similar to that adopted in the strict liability context would have utility in ordinary negligence cases as well, it would not be an appropriate subject of jury instructions where as here the issue of causation is contested and reasonable persons could differ as to the probable cause of the event and the likelihood that the County's negligence was associated with it.

### III.

### Expert Testimony

Finally, Peavler contends the trial court committed reversible error by permitting the County's expert, Dr. Robert Burns Forney, to testify concerning the effects of alcohol on an individual's driving ability. Peavler established through preliminary questioning that Dr. Forney was unable to offer an opinion as to the effectiveness of traffic signs on intoxicated drivers or how Brent Owen, the driver of the vehicle, would react at a given blood alcohol level.

 While traditionally expert testimony has been inadmissible when it concerns a subject beyond the knowledge and experience of the average lay person, the modern standard for admissibility is whether the testimony will assist the trier of fact in understanding the evidence. *Mihay v. State* (1987), Ind., 515 N.E.2d 498, 500; *Summers v. State* (1986), Ind.App., 495 N.E.2d 799.

 At the time of the accident, Brent Owen had a blood alcohol level of .186%. Peavler had a blood alcohol level of .105%.

Forney's knowledge and experience would surely help the jury relate the level of blood alcohol to the extent of impairment and evaluate the mental functioning, including judgment and perception, of both Owen and Peavler, assessments relevant to the reasonableness of Peavler's actions and the critical question of cause. We find no abuse of discretion in permitting the testimony of Dr. Forney.

### IV.

### Governmental Immunity

The County argues by cross appeal that the trial court erred in denying its motion for summary judgment brought on the basis of governmental immunity; hence, any error in the trial of Peavler's action is harmless. The County's motion apparently was never ruled upon, the parties agreeing that an evidentiary hearing should be held after the jury returned its verdict. The County did not obtain a ruling after the jury found for the County or move the court for a hearing.

 When no ruling is made on a motion by the trial court, it cannot be assumed that the motion was denied. By proceeding without objecting to the court's failure to hold a hearing on the motion or enter a ruling, the County has waived any alleged error. *Gann v. State* (1988), Ind., 521 N.E.2d 330, 332; *Chustak v. Northern Indiana Public Service Co.* (1972), 259 Ind. 390, 288 N.E.2d 149, 152. Given our resolution of the other issues in this appeal, and waiver of error by the County, further review of the merits of this issue is unnecessary.

Judgment affirmed.

MILLER, P.J., concurs.

RATLIFF, C.J., concurs in result.