**Brandy R. HANSON, By Her Parents and Next Friends, Eric HANSON and Pamela Hanson, Appellant–Plaintiff,**

v.

**VIGO COUNTY BOARD OF COM-MISSIONERS and Vigo County, Appellees–Defendants.**

No. 77A04–9412–CV–481.

Court of Appeals of Indiana.

Jan. 4, 1996.

Frederick W. Crow, Young & Young, Indianapolis, for Appellant.

Sharon L. Groeger, Karl L. Mulvaney, Bingham Summers Welsh & Spilman, Indianapolis, for Appellee.

## OPINION

CHEZEM, Judge.

### Case Summary

Plaintiff–Appellant, Brandy R. Hanson ("Hanson"), appeals the grant of summary judgment in favor of Vigo County Board of Commissioners ("the Board") and Vigo County, ("the County"), (collectively, "Vigo"). We reverse and remand for trial.

### Issues

Hanson presents one issue for our review which we restate as: whether Vigo is immune from legal action for Hanson's injuries pursuant to the Indiana Tort Claims Act.

### Facts and Procedural History

In 1988, Hanson was visiting her grandparents in Vigo County. While riding her bicycle, she was struck by a vehicle at the intersection of 25th Place and Maybelle Avenue and was injured. In 1986, United Consulting Engineers, Inc. ("United") informed the Board about the availability of the federal funds to implement an approved program for the installation and replacement of road signs. The program was to ensure uniform signs at every intersection in the county. The Board retained United to design a plan for the placement and replacement of signs on roads throughout the county. The Board approved the plan without deliberation regarding the placement and replacement at each individual intersection and delivered it to the county engineer to implement. Completion of the project began in 1988, and started from the first page of the plan, giving no priority to placement at unmarked intersections over replacement at marked intersections. The intersection of 25th Place was unmarked when the collision occurred. In 1990, Hanson filed suit against Vigo alleging that Vigo's negligence caused her injuries.

Vigo's motion for summary judgment, based upon governmental immunity for performance of a discretionary function, was granted by the trial court.

### Discussion and Decision

■ When reviewing a grant of summary judgment, our well-settled standard of review is the same as it was for the trial court: whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Streiler v. Norfolk and W. Ry. Co.* (1994), Ind.App., 642 N.E.2d 1019, *trans. denied.* We do not weigh the evidence but will consider the facts in the light most favorable to the nonmoving party. *Joseph v. LaPorte County* (1995), Ind.App., 651 N.E.2d 1180, 1183, *reh. denied.*

■ The Indiana Tort Claims Act ("ITCA") allows suit against government entities for torts committed by their agencies or employees. Ind.Code 34-4-16.5-1 to -20. Pursuant to the ITCA, governmental entities may be liable for such torts unless one of the exceptions of the ITCA applies. Vigo's claim of immunity was based upon IC 34-4-16.5-3 which provides:

> A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from:
>
> . . . .
>
> (6) The performance of a discretionary function;
>
> . . . .

The party seeking immunity bears the burden of proving that its conduct falls within the exception set out in the ITCA. *Mullin v. Municipal City of South Bend* (1994), Ind., 639 N.E.2d 278. The issue of whether a particular governmental act is discretionary and therefore immune is a question of law for the court to decide, although the question may require an extended factual development. *Peavler v. Monroe County Bd. of Comm'rs* (1988), Ind., 528 N.E.2d 40, 46, appeal after remand, *Peavler v. Monroe County Bd. of Comm'rs* (1990), Ind.App., 557 N.E.2d 1077, *trans. denied.* We narrowly construe immunity because it provides an exception to the general rule of liability. *Id.*

■ In determining whether governmental acts are discretionary and therefore immune from liability, we employ the "planning-operational" standard. *Id.* Planning functions are discretionary and are therefore shielded by immunity, while operational functions are not. Planning functions involve the formulation of basic policy characterized by official judgment, discretion, weighing of al-

ternatives, and public policy choices. *Id.* at 45. Operational functions are characterized by the execution or implementation of previously formulated policy. *Id.*

 Hanson conceded that Vigo's decision to place and replace signs at intersections was a discretionary function and therefore immune. Hanson asserts Vigo incurred liability as a result of the negligent implementation of that policy decision by the County's employee. Hanson alleged that the county engineer, in implementing the sign plan, was negligent for failing to prioritize placement at unmarked intersections prior to replacing uniform signs at intersections which were currently marked. Vigo argues that the implementation of sign placement was adopted as a whole with the plan and, thus, was a policy decision; thus, Vigo argues it was immune from any liability.

 In determining whether Vigo has engaged in the type of decision-making for which it is immune from liability, we must examine both the nature of the governmental act and the decision-making process involved. *Id.* at 45. Vigo bears the burden of proving that the challenged act or omission was a policy decision made by consciously balancing risks and benefits. *Greathouse v. Armstrong* (1993), Ind., 616 N.E.2d 364, 367. This proof may take the form of Board meeting minutes, comprehensive ordinances, or studies which show the question had been evaluated and the Board made an affirmative policy decision. *Peavler,* 528 N.E.2d at 48. Vigo merely provided a Commissioner's testimony indicating that the Board probably had a meeting to discuss United's plan and that the Board approved the plan as a whole. Vigo did not introduce any Board meeting minutes. It did not present evidence proving the issue that implementation of the plan had been considered by the Board and the related decision was made by consciously balancing risks and benefits. The record shows that it was the county engineer who decided how to implement the Board's plan. While the county engineer exercised some discretion in how he implemented the policy, his actions did not rise to the level of executive judgments that should be afforded protection under the governmental immunity doctrine.

see, *Greathouse,* 616 N.E.2d at 367. If policy formulation included every act which involves any element of choice, judgment or ability to make responsible decisions, every act would then fall within the discretionary function exception. There is no such broad legislative purpose. *Id.* at 368.

Vigo next argues where acts of omission are alleged, as here, the conscious balancing may be demonstrated by evidence showing that the governmental entity considered improvements of the general type alleged in a plaintiff's complaint. *Voit v. Allen County* (1994), Ind.App., 634 N.E.2d 767, 770, *reh. denied, trans. denied.* In *Voit,* the record revealed that the county engaged in a systematic process for determining what improvements would be made to county highways generally: first, the Director of Transportation Planning for Local Governments made recommendations to the Urban Transportation Advisory Board ("UTAB"); the UTAB (who did traffic counts, kept track of all accidents, citizen complaints, and other safety problems) then made recommendations in the form of a list of projects to the Board of Commissioners of County; finally, the Board made the ultimate decision on highway improvement projects. When making the decisions, the Board considered written recommendations, the changed conditions of county roads, and the allocation of available resources. In that case, the UTAB concluded that traffic projections did not show a need to improve that particular road, and therefore made no recommendations concerning that road. We held that because no recommendation was made under those circumstances, there was no need for the Board to have specifically considered and rejected improvements to that road. It was sufficient to demonstrate that they consciously engaged in decision making regarding the general type of improvements alleged in the plaintiff's complaint. *Id.*

In *City of Crown Point v. Rutherford* (1994), Ind.App., 640 N.E.2d 750, *reh. denied, trans. denied,* a pedestrian alleged that the city of Crown Point was negligent for failing to consider repairing the particular segment of sidewalk on which she fell and was in-

jured. We applied the *Voit* test and held that Crown Point's management of its sidewalk rehabilitation program resulted from a decision involving the formulation of basic policy and from a balancing of risks and benefits. There was evidence that Crown Point had instituted a comprehensive scheme to renovate its sidewalks: the key decision-makers contemplated and balanced public policy factors and weighed budgetary considerations; there was considerable testimony regarding the decision to target other areas; and, the Mayor's office made the decisions regarding which sidewalks would be repaired. *Id.* at 753.

Nonetheless, in the instant case, the record does not reveal Vigo engaged in a systematic process for determining how to implement the sign plan. Vigo assumed that United had determined the order of completion. But United did not know of any importance in knowing or specifying unmarked versus marked intersections, did no traffic studies or accident report compilations, and did not discuss with Vigo any prioritization in implementation of the plan. Vigo's engineer had no involvement with the sign program until a set of plans was delivered to him to implement. He had no discussion with Board Commissioners, nor did he get any type of instruction from the Board as to how to implement the plan.

Vigo argues that the Board considered placing signs at unmarked intersections generally only when they received a complaint that a particular intersection was dangerous. The Board had not received any complaints regarding the intersection at 25th Place prior to the institution of the sign program. However, no record shows Vigo specifically considered placing a sign at 25th intersection, or consciously engaged in a decision process regarding placing signs at unmarked versus marked intersections. The record does not show the Board even discussed the differentiation between marked and unmarked intersections. In short, Vigo has not established factually a basis for applying *Voit*. Furthermore, a reactionary approach of posting warning signs only after receiving complaints is not a *Peavler*-type decision-making process. *Joseph*, 651 N.E.2d at 1186.

 Merely labeling an action as planning, without more, cannot pass for analysis. *Peavler*, 528 N.E.2d at 45. Accordingly, the record does not support the conclusion that no genuine issues of material fact remain regarding Vigo's immunity. We therefore reverse the trial court's grant of summary judgment and remand for the determination of whether the Board engaged in a decision-making process regarding the implementation of the sign plan and that the implementation decision resulted from a conscious balancing of risks and benefits.

Reversed and remanded.

RILEY and STATON, JJ. concur.