**LAKE COUNTY JUVENILE COURT, and** Darlene Wanda Mears, Lake County Council, Lake County Board of Commissioners, Edward Smith and Paul Mathews, Appellants–Defendants,

v.

John SWANSON, Individually; Debra Swanson, Individually; John Swanson and Debra Swanson as next friend of Michael Swanson, Appellees–Plaintiffs.

No. 64A03–9512–CV–396.

Court of Appeals of Indiana.

Sept. 16, 1996.

Rehearing Denied Oct. 24, 1996.

Gerald M. Bishop and Cheryl A. Kuechenberg, Greco Pera Bishop & Vernia, Merrillville, for Lake County Council.

James B. Meyer, Meyer, Lyles & Godshalk, Gary, for Lake County & Lake County Board of Commissioners.

Pamela Carter, Attorney General of Indiana, Kelly J. Whiteman, Deputy Attorney General, Indianapolis, Robert M. Schwerd, Hilbrich, Cunningham & Schwerd, Highland, for Edward Smith and Paul Matthews.

Brian J. Hurley, Douglas, Alexa, Koeppen & Hurley, Valparaiso, Ivan Bodensteiner, Valparaiso, for Appellee.

## OPINION

STATON, Judge.

Lake County Council, Lake County Juvenile Court, Darlene Wanda Mears, Lake County, Lake County Board of Commissioners, Edward Smith and Paul Matthews (collectively "Defendants") bring this interlocutory appeal from the denial of their motions for summary judgment. In this appeal, there are two issues we must address, which we restate as:

I. Whether the trial court erred in denying Defendants' motions for summary judgment on Swanson's § 1983 claim.

II. Whether the trial court erred in denying Defendants' motions for summary judgment regarding Swanson's state tort claims.

We affirm in part, reverse in part, and remand.

The facts most favorable to the nonmovants, John, Debra and Michael Swanson (collectively "Swanson"), reveal that on September 6, 1992, then seventeen year-old Michael, was arrested and taken into custody by the Lake County Sheriff for driving without a valid driver's license. Michael was transported to the Lake County Juvenile Detention Center where he had to await a pre-trial hearing the next business morning. He was assigned to a room with three other inmates. The room had a video camera which allowed detention officers to monitor the room from a control booth. While in the room, Michael was attacked by one of his cellmates and anally raped. On January 20, 1993, Swanson filed a state court complaint, which was amended two times thereafter. The third amended complaint alleged that each defendant was negligent and that each defendant violated Michael's substantive due process rights pursuant to 42 U.S.C. § 1983. After several Defendants filed motions for summary judgment, the trial court found that there were genuine issues of material fact with reference to all remaining defendants.[1] This appeal ensued.

Summary judgment is appropriate only when the evidentiary matter designated by the parties shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); *Ramon v. Glenroy Construction Co., Inc.*, 609 N.E.2d 1123, 1127 (Ind.Ct.App.1993), *trans. denied.* The burden is on the moving party to prove there are no genuine issues of material fact, and he is entitled to judgment as a matter of law. Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind.1992). At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. T.R. 56(C). The movant bears the burden of establishing the propriety of summary judgment, and all facts and inferences to be drawn therefrom are viewed in a light most favorable to the non-movant. *Ramon, supra.*

### I.

#### *Section 1983 Claims*

Collectively, the Defendants contend that the trial court erred in denying their motions for summary judgment on Swanson's § 1983 claim. Section 1983 of Title 42 provides a civil remedy against any person who, under color of state law, subjects a citizen of the United States to the deprivation of any rights, privileges, or immunities secured by the federal Constitution or federal laws. 42 U.S.C. § 1983.

First, the Lake County Juvenile Court contends that it is not a person within § 1983. Section 1983 does not provide a remedy against states, state entities or state officials sued in their official capacities. These parties are not considered "persons"

---

1. Pursuant to the trial court's order dated October 26, 1995, two defendants were dismissed from this litigation, Krysti Wheaton and Lisa Turner. Record at 816–18. Two additional parties, Robert Bennett and Tomeitha Moore, have not appealed the trial court's ruling; thus, any claims against Bennett or Moore are not at issue in this appeal.

under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). County courts in Indiana are exclusively units of the judicial branch of the state's constitutional system; therefore, the juvenile court is a state entity. IND. CONST. art. 3, § 1 and art. 7, § 1; *Woods v. Michigan City, Ind.*, 940 F.2d 275, 279 (7th Cir.1991). Thus, the juvenile court is not a "person" for purposes of § 1983. The trial court erred in failing to grant summary judgment in favor of the juvenile court on Swanson's § 1983 claim.

■ Second, Darlene Wanda Mears ("Mears"), former judge of the Lake County Juvenile Court, contends she was entitled to summary judgment under § 1983. As a preliminary matter, we must address whether Mears has been sued in her official capacity or in her personal capacity. Swanson alleges that Mears was sued in her individual capacity. An officer sued in her personal capacity comes to the court as an individual unlike an official capacity defendant. *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 361–62, 116 L.Ed.2d 301 (1991); *Crawford v. City of Muncie*, 655 N.E.2d 614, 620 (Ind.Ct.App. 1995), *trans. denied.* A government official sued in her personal capacity fits within the § 1983 statutory term "person." *Id.*

■ We must look to the language of Swanson's complaint to determine whether Mears was sued in her personal capacity. One indicia of the capacity in which a government agent has been sued under § 1983 is the language of the caption of the case. *Crawford, supra*, at 620 (citing *Duckworth v. Franzen*, 780 F.2d 645, 649 (7th Cir.1985), *cert. denied*, 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986)). Another indicia is the allegations and language used in the body of the complaint. *Id.* (citing *Meadows v. Indiana*, 854 F.2d 1068, 1069 (7th Cir.1988)). If a plaintiff seeks to sue public officials in their personal capacities or in both their personal and official capacities, the plaintiff should expressly state so in the complaint. *Id.* We also note that courts ordinarily assume that an official is sued only in her official capacity when a plaintiff alleges that a state official acted under the color of state law giving rise to liability under § 1983.

*Crawford, supra* (citing *Hill v. Shelander*, 924 F.2d 1370, 1373 (7th Cir.1991), *reh. denied* ).

■ The caption of Swanson's third amended complaint references Mears as "Darlene Wanda Mears." Record at 257. However, that same caption references another defendant as "Robert Bennett as superintendent of the Juvenile Detention Center and Individually." *Id.* Thus, Swanson clearly appreciated the difference between official and personal capacity lawsuits. Swanson failed to specify the capacity in which Mears is being sued; therefore, the complaint will be construed as suing Mears only in her official capacity. *See Yeksigian v. Nappi*, 900 F.2d 101, 104 (7th Cir.1990).

Furthermore, the language of the complaint supports that Mears is being sued in her official capacity. Paragraph two of the complaint states, "Darlene Wanda Mears was the sitting Juvenile Court Judge at the times mentioned herein." Record at 258. In addition, paragraph seven of the complaint states in pertinent part:

> Furthermore, as the employers and masters of the *individual defendants* and the staff of the Juvenile Detention Center, the Juvenile Court, *Darlene Wanda Mears* [,] the Juvenile Detention Center and the Lake County Council and Lake County Commissioners were responsible for the negligence and or acts or omissions of the juvenile detention staff and is, [sic] therefore, liable to Plaintiffs.

Record at 260 (emphases added). In that paragraph, Mears was grouped with the other defendants being sued in their official capacities which further indicates that Swanson intended to sue her only in her official capacity. Accordingly, we conclude that Mears was sued in her official capacity only.

■ Mears argues that because she was sued in her official capacity she is not a "person" for purposes of Swanson's § 1983 claim. We agree. State officials sued for damages in their official capacities are not "persons" within the meaning of § 1983 because they assume the identity of the government that employs them. *Hafer, supra*, at 25, 112 S.Ct. at 361–62. In *Hafer*, the Unit-

ed States Supreme Court held that it is only when a state official is sued in her individual capacity that can she be a "person" within the meaning of § 1983. *Id.* at 31, 112 S.Ct. at 364–65. We have concluded that Mears is being sued only in her official capacity, judge of the juvenile court. Judges of county courts are judicial officers of the state judicial system and are not county officials. *Woods, supra,* at 279. Accordingly, any suit against Mears in her official capacity is a suit against a state entity and cannot be maintained under § 1983. Thus, Mears is entitled to judgment as a matter of law on Swanson's § 1983 claim.

Third, Edward Smith ("Smith") and Paul Matthews ("Matthews"), detention officers at the Lake County Juvenile Detention Center, argue that they were entitled to summary judgment on Swanson's § 1983 claim because they are entitled to judicial immunity. They argue that as employees of the detention center, they are entitled to immunity through the judge because they are an "arm of the court." Appellants' Br. at 10–11.[2]

 The United States Supreme Court has held that judges are immune from liability for their judicial acts, even when they act maliciously or corruptly.[3] *Stump v. Sparkman,* 435 U.S. 349, 356–57, 98 S.Ct. 1099, 1104–05, 55 L.Ed.2d 331 (1978), *reh. denied.* But immunity is only granted when it is essential to protect the integrity of the judicial process. *McMillan v. Svetanoff,* 793 F.2d 149, 151 (7th Cir.1986), *cert. denied,* 479 U.S. 985, 107 S.Ct. 574, 93 L.Ed.2d 577 (1986) (quoting *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1217–18, 18 L.Ed.2d 288 (1967)).

**2.** We note that Smith and Matthews rely extensively upon this court's decision in *J.A.W. v. State,* 650 N.E.2d 1142 (Ind.Ct.App.1995), to support their argument that judicial immunity has been extended to nonjudicial officers who perform quasi-judicial functions. Appellants' Br. at 8–12. However, on October 12, 1995, the Indiana Supreme Court granted transfer in *J.A.W.* When transfer is granted, the court of appeals opinion is vacated. Ind. Appellate Rule 11(B)(3). Thus, Smith and Matthews' reliance upon *J.A.W.* is misplaced.

**3.** The rationale for this doctrine is that judges should be free to make controversial decisions and act upon their convictions without fear of

 Courts are hesitant and cautious in applying the judicial immunity doctrine to areas outside the traditional adversarial process, such as quasi-judicial acts. *Id.* (quoting *Malley v. Briggs,* 475 U.S. 335, 340–46, 106 S.Ct. 1092, 1095–99, 89 L.Ed.2d 271 (1986)). The United States Supreme Court has extended absolute immunity to certain others who perform functions closely associated with the judicial process.[4] *Cleavinger v. Saxner,* 474 U.S. 193, 200, 106 S.Ct. 496, 500, 88 L.Ed.2d 507 (1985). But where those officials seek exemption for unconstitutional conduct, they bear the burden of showing that public policy requires an exemption of that scope. *Id.* at 201, 106 S.Ct. at 500. If the acts do not involve the judicial process so that a fear exists that freedom of judicial decision-making may be stifled, the official should not be free from suit. *McMillan, supra,* at 154.

 As employees of the detention center, Smith and Matthews were not performing functions closely associated with the judicial process. In fact, they were not even implementing or enforcing a trial court's order. Rather, Swanson was awaiting a pretrial hearing while being held at the detention center. No judicial proceeding had occurred; thus, Smith and Matthews could not be entitled to judicial immunity.

 Moreover, Smith and Matthews cannot seek immunity simply because the juvenile court judge has the power to appoint the juvenile detention center's employees pursuant to Ind.Code § 31–6–9–5 (1988). Judicial immunity only extends to persons who perform functions closely associated with the

personal liability. *Stump,* infra, at 364, 98 S.Ct. at 1108–09. It is the concern for principled and fearless decision-making that forms the basis for judicial immunity. *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1217–18, 18 L.Ed.2d 288 (1967).

**4.** *See Briscoe v. LaHue,* 460 U.S. 325, 335, 103 S.Ct. 1108, 1115, 75 L.Ed.2d 96 (1983) (witnesses); *Butz v. Economou,* 438 U.S. 478, 513, 98 S.Ct. 2894, 2914, 57 L.Ed.2d 895 (1978) (administrative law judge); *Yaselli v. Goff,* 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927) (prosecutors).

judicial process. *Cleavinger, supra,* at 200, 106 S.Ct. at 500. Here, Smith's and Matthews' duties as detention officers are not associated with the judicial process. Thus, the trial court correctly denied Smith and Matthews' motion for summary judgment.

Fourth, the remaining appellants, Lake County, Lake County Board of Commissioners ("Board"), and Lake County Council ("Council") (collectively "County")[5] argue that they were also entitled to summary judgment on Swanson's § 1983 claim. Specifically, County argues that Swanson failed to present any evidence of a formal written policy or informal custom which caused Swanson's alleged constitutional violations. In order to survive summary judgment, Swanson may not merely rely on the allegations in his complaint, but must come forward with sufficient factual allegations to establish the existence of genuine issues. T.R. 56(E); *Mullin v. South Bend,* 639 N.E.2d 278, 281 (Ind.1994).

 The United States Supreme Court has held that municipalities are liable under § 1983 only when the plaintiff shows that the municipality, in executing its official policy or practice, has caused the constitutional violation. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978).[6] It is not enough for a § 1983 plaintiff to merely show that agents or employees of the municipality inflicted the injury. *Hirsch v. Burke,* 40 F.3d 900, 904 (7th Cir.1994). Section 1983 states that liability will attach only when a governmental entity causes the violation, and proceeding against a municipality under a theory of respondeat superior falls short of establishing this level of causation. *Id.* (citing *Monell, supra,* at 692–94, 98 S.Ct. at 2036–38).

 Swanson argues that County is liable pursuant to § 1983 based upon several omissions—failure to hire proper personnel, failure to adequately staff the detention center, and failure to properly train the detention center employees. Thus, Swanson essentially claims that the County Defendants failed to institute policies and procedures to ensure that juvenile center detainees receive appropriate supervision. The Seventh Circuit has held that in making "failure to train" claims, plaintiffs must establish that a municipality's training program is inadequate and that "such inadequate training can justifiably be said to represent 'city policy.'" *Holmes, supra,* at 1200 (quoting *Canton v. Harris,* 489 U.S. 378, 390, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989)). The latter holds true when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the city can reasonably be said to have been deliberately indifferent." *Id.*

 Swanson's designated materials are devoid of any evidence which suggests that inadequate procedures, a failure to train, or any other County policy or custom caused Swanson's alleged constitutional deprivations. *See* Record at 632–722. Instead, Swanson relies upon a consent decree which was entered into by the Council and Board in an unrelated case in 1977. The consent decree set forth acceptable minimums for funding, training and staffing of the detention center. Thus, Swanson contends that failure to follow the consent judgment constitutes a failure to provide the minimum protection against civil rights deprivation.

 Even if County's conduct did violate the consent decree, it would not be enforceable through an action under § 1983. *Patrick v. Staples,* 780 F.Supp. 1528, 1549 (N.D.Ind.1991) (citing *DeGidio v. Pung,* 920 F.2d 525, 534 (8th Cir.1990)). By its own terms, § 1983 provides for a cause of action based upon the deprivation of rights, privi-

**5.** Pursuant to Ind. Appellate Rule 8.3(E), Appellants Lake County and Board joined in the brief of Council. Thus, we will refer to these three appellants collectively as "County."

**6.** *See also Woods, supra,* at 277–78 (summary judgment for defendants affirmed where plaintiffs failed to identify any unconstitutional policy and show how its application caused their injury); *Holmes v. Sheahan,* 930 F.2d 1196, 1200–01 (7th Cir.1991) (district court erred in denying summary judgment for defendants where pretrial detainee failed to present evidence of any county policy or custom which caused him to be denied medical care).

leges, or immunities guaranteed by the Constitution or laws of the United States. 42 U.S.C. § 1983. A consent decree is in the nature of a contract and it is neither the Constitution nor a law of the United States. *Patrick, supra* (citations omitted). Remedial court orders per se cannot serve as a substantive basis for a § 1983 claim for damages because such orders do not create "rights, privileges, or immunities secured by the Constitution and laws." *Id.* (citing *Green v. McKaskle,* 788 F.2d 1116, 1123 (5th Cir. 1986)). Accordingly, any alleged violation of a consent decree provides no basis for a claim under § 1983. *Patrick, supra,* at 1549–50.

Moreover, our review of the record reveals that Swanson has failed to introduce any evidence that supports a failure to hire proper personnel, failure to adequately staff the detention center, and failure to properly train the detention center staff allegations. *See Crawford, supra,* at 619–20. Thus, these claims must fail as they constitute conclusory allegations. *See Holmes, supra,* at 1201. Therefore, in the absence of any policy, there is no genuine issue of material fact and Lake County, Board and Council are entitled to judgment as a matter of law.

As for Swanson's § 1983 claims, we conclude that the trial court erred in denying the summary judgment motions of the Lake County Juvenile Court, Darlene Wanda Mears, Lake County, Lake County Board of Commissioners and the Lake County Council on Swanson's § 1983 claim. We affirm only the trial court's denial of Smith and Matthews' summary judgment motion.

## II.

### Tort Claims

In Swanson's third amended complaint, Swanson also alleges tort claims against each defendant. Collectively, Defendants argue that the trial court erred in denying their motions for summary judgment on Swanson's state law claim.

First, the Lake County Juvenile Court and Mears argue that the trial court erred in denying their summary judgment motion because Swanson failed to comply with the notice provisions of the Indiana Tort Claims Act ("ITCA"), Ind.Code §§ 34–4–16.5–1 to –20. Compliance with the ITCA is a procedural precedent which Swanson must prove and which the trial court must determine prior to trial. *Brunton v. Porter Memorial Hosp. Ambulance Serv.,* 647 N.E.2d 636, 639 (Ind.Ct.App.1994). Thus, compliance with the ITCA is not a question of fact for the jury but rather a legal determination to be made by the court. *McGill v. Ind. Dep't of Correction,* 636 N.E.2d 199, 204 (Ind.Ct.App.1994), *reh. denied.*

Specifically, the juvenile court and Mears contend that they were entitled to summary judgment because no tort claim notice was given to the attorney general. The ITCA provides that a claim against the state is barred unless notice of the claim is filed with the attorney general and the state agency involved within 180 days after the loss occurs. Ind.Code § 34–4–16.5–6 (1988).[7] That provision also operates to bar claims against employees of the state. *Poole v. Clase,* 476 N.E.2d 828 (Ind.1985), *reh. denied; Hupp v. Hill,* 576 N.E.2d 1320, 1326 (Ind.Ct.App.1991).

As noted in Part I, *supra,* the juvenile court is a state entity. *Woods, supra,* at 279. Pursuant to the ITCA, "state" is defined as Indiana and its state agencies. Ind.Code § 34–4–16.5–2(g) (Supp.1992). Because the juvenile court is a state entity and Mears is an employee of the state, Swanson was required to serve notice upon the attorney general and the state agency pursuant to IC 34–4–16.5–6. As the moving parties, the juvenile court and Mears, have the burden of producing evidence which made a prima facie showing that the attorney general did not receive timely notice. *See* T.R. 56(C); *Rogers v. R.J. Reynolds Tobacco Co.,* 557 N.E.2d 1045, 1050 (Ind.Ct.App.1990), *reh. denied.* The juvenile court and Mears fulfilled that burden by producing the affidavit of Michael R. Ward, which stated that the attorney gen-

---

**7.** In 1995, this statute was amended to require notice to the attorney general *or* the state agency within *270* days after the loss. Ind.Code § 34–4–16.5–6 (Supp.1995) (emphases added).

eral's office never received notice of a tort claim from Swanson. Record at 449–50. Thereafter, the burden shifts to Swanson to prove that he mailed notice to the attorney general. *See* T.R. 56(E); *Rogers, supra,* at 1050. Swanson fails to produce any evidence indicating that a tort claim notice was mailed to the attorney general. Thus, there is no genuine issue of fact regarding notice to the attorney general as required by IC 34–4–16.5–6. Therefore, the trial court erred by failing to grant summary judgment in favor of the Lake County Juvenile Court and Mears.

■ Second, Smith and Matthews contend they were similarly entitled to summary judgment because of the lack of a tort claim notice. They argue that because the Lake County Juvenile Court controls the Lake County Juvenile Detention Center, the detention center is an entity of the state and, therefore, the detention center employees should be protected by the ITCA. While claims against detention center employees do fall within the ITCA, the notice provision which applies to tort claims against the juvenile court does not apply to tort claims against Smith and Matthews.

■ Smith and Matthews were employees of the Lake County Juvenile Detention Center, not employees of the state. Because a tort action against a governmental employee for actions taken within his scope of employment may impose liability upon the governmental employer, the plaintiff must provide notice to the employing agency before an action can proceed against the employees. *See Poole, supra; VanValkenburg v. Warner,* 602 N.E.2d 1046 (Ind.Ct.App. 1992), *trans. denied.* In this instance, the ITCA requires that a plaintiff file notice with the governing body of the political subdivision [8] and the Indiana political subdivision risk management commission within 180 days of the loss. Ind.Code § 34–4–16.5–7 (1988).

Here, Swanson's allegations in his complaint refer to the actions of Smith and Matthews which were performed in their duties as detention officers at the Lake County Juvenile Detention Center. Smith and Matthews were acting within the scope of their employment; thus, Swanson was required to provide notice to the Lake County Juvenile Detention Center. On October 13, 1992, Swanson forwarded a tort claim notice to the Lake County Juvenile Detention Center and the Lake County Board of Commissioners, among others. Record at 451–52. Thus, Swanson's tort claim notices to Smith and Matthews' employer, the detention center, and to the Board were sufficient. *See* IC 34–4–16.5–7. The trial court properly denied Smith and Matthews' motion for summary judgment.

Finally, County argues it is entitled to summary judgment on Swanson's state tort claim because it is immune from liability pursuant to the ITCA. Swanson alleges that County failed to provide sufficient funding to the detention center and that as a result of this lack of funding, the center lacked appropriate facilities and staff. Record at 257–61. Thus, Swanson contends that because of the inappropriate facilities and insufficient staff, he was injured. In response, County argues that its funding decisions are a discretionary function and; thus, County is immune from liability pursuant to the Indiana Tort Claims Act.[9]

■ We first note that County, as the party seeking immunity, has the burden of proving that its conduct falls within the exception set forth in the ITCA. *Mullin v.*

---

8. The definition of "political subdivision" includes a county. IC 34–4–16.5–2(f)(1).

9. County argues it was also entitled to summary judgment because County had no ability to control the work of the detention center employees; thus, there can be no finding of respondeat superior. However, Swanson does not base his claim against County solely upon on a theory that County is responsible for the acts of the individual employees. Rather, Swanson alleges that County failed to provide sufficient funding to hire appropriate staff for the detention center. Record at 260. County has a statutory duty to pay all expenses of the detention center. Ind.Code § 31–6–9–5(b) (1988). Furthermore, pursuant to Ind.Code § 36–2–5–3(a) (1988), County has the power to fix the number of employees, describe and classify positions, and adopt schedules of compensation. Thus, County is not entitled to summary judgment as a matter of law.

*South Bend,* 639 N.E.2d 278, 281 (Ind.1994). Whether a particular governmental act is discretionary and therefore immune is a question of law for the court to decide, although the question may require an extended factual development. *Hanson v. Vigo County Bd. of Comm'rs,* 659 N.E.2d 1123, 1125 (Ind.Ct.App.1996). We narrowly construe immunity because it provides an exception to the general rule of liability. *Id.*

■ Governmental entities, such as counties, are subject to liability for the torts committed by their employees unless one of the exceptions in the ITCA applies. *Peavler v. Monroe County Bd. of Comm'rs,* 528 N.E.2d 40, 42 (Ind.1988), appeal after remand, 557 N.E.2d 1077 (Ind.Ct.App.1990), *trans. denied.* County's claim for immunity is based upon the exception which provides that a governmental entity is not liable if the loss results from the performance of a discretionary function. Ind.Code § 34–4–16.5–3(6) (Supp.1992).

■ In determining whether governmental acts are discretionary, Indiana applies the "planning-operational" standard. *Peavler, supra,* at 46. Planning functions are discretionary and are therefore shielded by immunity, while operational functions are not. Planning functions involve the formulation of basic policy characterized by official judgment, discretion, weighing of alternatives, and public policy choices. *Id.* at 45. Operational functions are characterized by the execution or implementation of previously formulated policy. *Id.*

■ In determining whether County engaged in the type of decision-making for which it is immune from liability, we must examine both the nature of the governmental act and the decision-making process involved. *Hanson, supra,* at 1126 (quoting *Peavler, supra,* at 45). County must prove that the challenged act or omission was a policy deci-

sion made by consciously balancing risks and benefits. *Id.* (quoting *Greathouse v. Armstrong,* 616 N.E.2d 364, 367 (Ind.1993)). This proof may take the form of meeting minutes, testimony of Council members regarding the decision-making process involved, or studies which show the allocation of resources had been evaluated and the Council made an affirmative policy decision. *Peavler, supra,* at 48; *Hanson, supra,* at 1126.

■ Here, County merely provides a Council member's affidavit which states that the Council consciously balances the risks and benefits involved in allocating finite resources. Record at 539–41. County did not introduce any meeting minutes. Moreover, no evidence is presented which indicates that Council members consciously balanced risks and benefits regarding the allocation of funds. Thus, the record does not reveal that County engaged in a systematic process in determining how to allocate and prioritize funds.[10]

Despite Swanson's contentions that the consent judgment mandated certain funding levels and that the juvenile court judge repeatedly requested additional funding, County presented no evidence from which we can evaluate the nature of County's conduct in failing to provide additional funds to the detention center. From the record, we cannot determine whether County's failure to provide additional funds arose from a judgment based upon policy considerations. *See Peavler, supra,* at 48. Accordingly, the record does not support the conclusion that no genuine issues of fact remain regarding County's immunity.

On remand, County bears the burden to demonstrate the discretionary nature of the decision in order to prevail on a claim of immunity. If County can present evidence

---

**10.** *See Crown Point v. Rutherford,* 640 N.E.2d 750, 753–54 (Ind.Ct.App.1994), *trans. denied* (Crown Point appropriately balanced risks and benefits where evidence showed: Crown Point instituted a comprehensive scheme to renovate its sidewalks; key decision-makers contemplated and balanced public policy factors and weighed budgetary considerations; and considerable testimony was introduced regarding the decision to

target other areas); *Voit v. Allen County,* 634 N.E.2d 767, 770–71 (Ind.Ct.App.1994), *trans. denied* (record revealed county engaged in a systematic process for determining highway improvements where board considered several written recommendations, the changed conditions of county roads, and the allocation of available resources).

that the Council members engaged in a policy orientated decision-making process, and determined that the allocation of resources to the detention center was sufficient, then the courts should not second-guess their judgment. *See id.* at 48. Therefore, we affirm the trial court's denial of summary judgment and remand for a determination of whether County engaged in decision-making process regarding the allocation of funds.

For the reasons set forth above, we conclude that Lake County Juvenile Court and Mears were entitled to summary judgment on Swanson's state tort claims. The trial court properly denied all other summary judgment motions on Swanson's state tort claims.

Affirmed in part, reversed in part, and remanded.

HOFFMAN and RILEY, JJ., concur.