## FOR PUBLICATION



FILED

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DANIEL H. PFEIFER**
**JEROME W. MCKEEVER**
Pfeifer, Morgan & Stesiak
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**JAMIE C. WOODS**
**JAMES R. BYRON**
Thorne Grodnik, LLP
Mishawaka, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JUSTIN WHITMORE, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 71A03-1306-CT-242 |
| | ) | |
| SOUTH BEND PUBLIC TRANSPORTATION | ) | |
| CORPORATION a/k/a TRANSPO, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE ST. JOSEPH CIRCUIT COURT
The Honorable Michael G. Gotsch, Judge
Cause No. 71C01-1203-CT-59

**March 19, 2014**

**OPINION–FOR PUBLICATION**

**BAKER, Judge**

In this case we consider an unprovoked tortious assault on an appellee-defendant South Bend Public Transportation Corporation (TRANSPO) bus. Here, the trial court granted summary judgment in favor of TRANSPO on appellant-plaintiff James Whitmore's negligence complaint, determining that Whitmore's action on the bus constituted contributory negligence. Whitmore now appeals, arguing that his actions were not contributory negligence and that he could not foresee that the man he sat next to on the bus would assault him. Under these circumstances, we find that there is a question of material fact as to whether Whitmore was contributorily negligent or incurred the risk of his assault. Therefore, we reverse and remand for further proceedings.

FACTS

TRANSPO is a public transportation corporation and is a government entity for purposes of the Indiana Tort Claims Act.[1] During the early morning hours of Saturday, September 3, 2011, Whitmore, his friend Steven Colnitis, Colnitis' sister, Kara, and Kara's fiancé, Justin Pudenz, boarded a TRANSPO bus on Wayne Street in South Bend. Whitmore was a recent graduate of Notre Dame's MBA program, and he was visiting Notre Dame to attend a football game that weekend. Whitmore had consumed four or five "vodka sodas" at a bar between the hours of 10:30 or 11:00 p.m. on September 2 and 2:00 or 2:15 on September 3, before getting on the TRANSPO bus. Appellant's App. at 54. He "definitely had . . . a buzz from the alcohol." Id.

---

[1] Ind. Statute § 34-13-3-1 et seq. The Indiana Tort Claims Act specifically includes public transportation corporations.

2

The bus was very crowded, with almost every seat occupied and several people standing up. As Whitmore walked down the aisle, he tripped over something but did not fall to the ground. Whitmore turned around and saw a man[2] sitting down with his legs stretched out in the aisle. Whitmore "saw him and he was immediately engaging with" Whitmore, which led Whitmore to believe that he "was the person [who had] just made contact with" Whitmore. Id. at 69-70. The man called Whitmore an "idiot or dumbass or that kind of thing" and laughed. Id. at 71. Whitmore perceived that the man was a "tough guy" or "macho." Id. at 72-73. Whitmore also perceived that the man was a bully.

Whitmore sat down next to the man and also in the vicinity of Whitmore's friends. After Whitmore sat down next to him, "nearly shoulder to shoulder," the man "kept talking . . . to [the man's] girlfriend" seated on the other side of him. Id. at 79-80. Whitmore heard the man say, "This guy's coming and sitting down next to me, you know, I'm just like tired of this." Id. at 80. Whitmore heard that and interpreted it to refer to Whitmore "being in [the man's] space." Id. Whitmore thought that the man's behavior was "bizarre." Id. Whitmore did not move from his seat. The man then turned to Whitmore and said, "You're f***ing with the wrong one." Id. at 81. And Whitmore responded, "I'm not scared of you." Id. Whitmore "did not think of [the man] as a credible threat to [him] physically." Id. at 83. Colnitis heard what sounded like a "verbal altercation" behind him between Whitmore and the man sitting next to him. Id. at 115.

_____

[2] Whitmore's assailant fled the scene before he could be apprehended, and he has not been identified to date.

3

Colnitis heard the men "verbally kind of bashing each other and the situation escalat[ed] very quickly." Id. at 115-16.

When Whitmore turned and began talking to his friends, the man stood up and punched Whitmore in the face. Colnitis intervened, and the man placed Colnitis in a choke hold. Whitmore attempted to pull the man away from Colnitis, but the man's girlfriend intervened and pushed Whitmore back into a seat. At some point, Colnitis and Whitmore attempted to push the man off the bus, but they were unsuccessful. The man then hit Whitmore again in the eye, breaking Whitmore's orbital bones. The assailant and his girlfriend fled the bus. Whitmore received emergency medical treatment for his fractured orbital bone. At the hospital, a health care provider administered a blood alcohol content test, which indicated that Whitmore's blood alcohol content was .126. That reading was taken at least one-half hour after Whitmore had last consumed an alcoholic beverage that morning.

Whitmore filed a complaint against TRANSPO alleging that it was "negligent for failing to provide a safe environment for its invitees." Id. at 3. TRANSPO moved for summary judgment alleging that it was entitled to summary judgment because it is a governmental entity and the doctrines of contributory negligence and incurred risk bar Whitmore's claims against it as a matter of law. Following a hearing, the trial court entered summary judgment in favor of TRANSPO. This appeal ensued.

## DISCUSSION AND DECISION

### I. Standard of Review

When we review the grant or denial of a summary judgment motion, we apply the same standard as the trial court. Kroger Co. v. Plonski, 930 N.E.2d 1, 4-5 (Ind. 2010). Summary judgment is appropriate only where the evidence shows that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Id.; Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party, and all doubts concerning the existence of a material issue must be resolved against the non-moving party. Id. Nevertheless, the trial court's grant of summary judgment "enters appellate review clothed with a presumption of validity," and the appellant bears the burden of demonstrating that the trial court erred. Trustcorp Mortg. Co. v. Metro Mortg. Co. Inc., 867 N.E.2d 203, 211 (Ind. Ct. App. 2007). Finally, if the trial court's grant of summary judgment can be sustained on any theory or basis in the record, we will affirm. Beck v. City of Evansville, 842 N.E.2d 856, 860 (Ind. Ct. App. 2006).[3]

### II. Contributory Negligence

When a tort claim is brought against a governmental entity such as TRANSPO, the common law defense of contributory negligence remains applicable under Indiana Code section 34-51-2-2. Thus, if a plaintiff is negligent to even a small degree and that

---

[3] TRANSPO did not provide an argument as to its lack of negligence. While this court may affirm on any theory or basis in the record, the parties have not designated any evidence to develop this argument thus far.

negligence proximately contributes to his claimed damages, contributory negligence will operate as a complete bar to his action; this is true even though as against non-governmental entities, any fault of a plaintiff will only operate to reduce the damages he might obtain. Funston v. School Town of Munster, 849 N.E.2d 595, 598 (Ind. 2006). The trial court determined that Whitmore's actions, namely attempting to remove the assailant from the bus, was contributory negligence as a matter of law. We disagree.

A plaintiff is contributorily negligent when his conduct falls below the standard to which he should conform for his own protection and safety. Negligence depends upon the lack of reasonable care that an ordinary person would exercise in like or similar circumstances. Id. at 598. Put another way, contributory negligence is the failure of a person to exercise for his own safety that degree of care and caution which an ordinary, reasonable, and prudent person in a similar situation would exercise. Id. Generally, contributory negligence is a question of fact for the jury to decide. It will only be a question of law appropriate for summary judgment if the facts are undisputed and only a single inference can be drawn therefrom. Id. at 599.

Here, the undisputed facts are as follows: Whitmore consumed four or five alcoholic beverages before getting on the bus. While boarding the bus, Whitmore believes he may have accidentally tripped over his assailant. Whitmore sat in the seat next to his assailant "nearly shoulder to shoulder," and the man "kept talking . . . to [the man's] girlfriend" seated on the other side of him. Appellant's App. p. 79-80. Whitmore heard the man say, "This guy's coming and sitting down next to me, you know, I'm just

6

like tired of this." Id. at 80. Whitmore did not move from his seat. The man turned to Whitmore and said, "You're f***ing with the wrong one." Id. at 81. Whitmore responded, "I'm not scared of you." Id. Whitmore turned and began talking to his friends. At that point, the man stood up and punched Whitmore in the face. Id. at 86. Colnitis intervened, and the man placed Colnitis in a choke hold. Id. at 89. At some point, Colnitis and Whitmore attempted to push the man off the bus, at which point the man then hit Whitmore again in the eye, breaking Whitmore's orbital bones. Id. at 96.

More than one inference might be drawn from these facts. For instance, a fact-finder might determine that a reasonably prudent person might have acted as Whitmore did when he told this "bully" that he was not scared of him. Id. at 81. Accordingly, we question the wisdom of determining as a matter of law that an individual is contributorily negligent when he is not the first aggressor in an altercation, but simply fails to meekly walk away from an individual that is violently disposed. Therefore, we find that a question of material fact exists as to whether or not Whitmore's actions constituted contributory negligence.

### III. Incurrence of Risk

The trial court also determined that Whitmore had incurred the risk of his injuries as a matter of law. TRANSPO argues that Whitmore did indeed incur the risk of his injuries because Whitmore knew or should have known that his words and actions risked provoking a physical altercation and serious physical injury.

7

Incurred risk is a defense to a claim of negligence, separate and distinct from the defense of contributory negligence. Power v. Bodie, 460 N.E.2d 1241, 1243 (Ind. Ct. App. 1984). "By definition, the very essence of incurred risk is the conscious, deliberate and intentional embarkation upon a course of conduct with knowledge of the circumstances." Id. An incurred risk must be voluntary. Richardson v. Marrell's Inc., 539 N.E.2d 485, 847 (Ind. Ct. App. 1989). Concerning the voluntariness of incurring this risk, this court has said:

> The very essence of incurred risk is the conscious, deliberate, and intentional embarkation upon the course of conduct with knowledge of the circumstances. It requires much more than the general awareness of a potential for mishap. Incurred risk contemplates acceptance of a specific risk of which the plaintiff has actual knowledge. . .

Id. (emphasis in original).

Here, the trial court determined that Whitmore incurred the risk of his injuries by looking at only a fraction of the circumstances that lead to Whitmore's injury. More particularly, Whitmore did in fact help to push the assailant off the bus, but only after he had already been assaulted once. Id. While the trial court determined that Whitmore "certainly recognized the risk of retaliation when he engaged in the conscious and deliberate course of conduct to attempt to throw the assailant off the bus," we cannot agree. Appellant's App. p. 277. We cannot say that one, as a matter of law, incurs the risk of assault when he defends himself. Therefore, we determine that there is a question of material fact as to whether Whitmore incurred the risk of assault.

8

We reverse the judgment of the trial court and remand for proceedings consistent with this opinion.

CRONE, J., concurs, and NAJAM, J., dissents with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

JUSTIN WHITMORE,           )
                               )

    Appellant-Plaintiff,        )
                               )

        vs.               )    No. 71A03-1306-CT-242
                               )

SOUTH BEND PUBLIC TRANSPORTATION  )
CORPORATION a/k/a TRANSPO,      )
                               )

    Appellee-Defendant.        )

APPEAL FROM THE ST. JOSEPH CIRCUIT COURT
The Honorable Michael G. Gotsch, Judge
Cause No. 71C01-1203-CT-59

**NAJAM, Judge, dissenting.**

I respectfully dissent. I agree with the trial court and would hold that Whitmore was contributorily negligent as a matter of law. In <u>Funston v. School Town of Munster</u>, 849 N.E.2d 595 (Ind. 2006), the plaintiff was injured when he leaned backwards and fell from the top row of a set of bleachers while watching a basketball game in a high school gymnasium. Our supreme court noted that "even a slight degree of negligence . . . will operate as a total bar" to a plaintiff's action or damages against a governmental

defendant. Id. at 598. The plaintiff sued the school, a governmental entity. And our supreme court agreed with the trial court that the plaintiff was contributorily negligent "to some degree" as a matter of law, barring his claims against the school. Id. at 600. The court rejected the plaintiff's argument that "a reasonable spectator could be distracted by the game and lean back inadvertently just as Mr. Funston did." Id. The court observed that, while "[i]t certainly is understandable that Mr. Funston would be distracted as he engaged his attention on his son's basketball game[,] . . . being understandable does not equate with being completely free of all negligence." Id. And the court found from the undisputed facts that "only a single inference can reasonably be drawn: Mr. Funston was negligent to some degree, and this is enough to establish the common law defense of contributory negligence as a matter of law." Id.

The court's reasoning in Funston dictates that Whitmore was contributorily negligent here. The undisputed designated evidence shows that Whitmore knowingly sat down next to a man whom he perceived to be a bully and taunted him after the man had warned Whitmore that he was "****ing with the wrong one." Following Funston, that evidence proves, as a matter of law, that Whitmore was "negligent to some degree." See id. The majority mischaracterizes Whitmore's duty of reasonable care under the circumstances. While he was not the first aggressor, he had a duty to act reasonably in light of what he recognized was a tense situation. I would not hold that Whitmore had a duty to "meekly walk away" but that he had a duty to take reasonable care to avoid

11

further aggravating a bully. The designated evidence shows that Whitmore breached that duty when he countered the man's threatening remark with his own bravado.

Next, a negligent act or omission is the proximate cause of injury if the injury is a natural and probable consequence which, in light of the circumstances, should reasonably have been foreseen or anticipated. Peavler v. Bd. of Comm'rs of Monroe Cnty., 557 N.E.2d 1077, 1080 (Ind. Ct. App. 1990). However, "'[f]oreseeability does not mean that the precise sequence of events or exact consequences which were encountered should have been anticipated. Rather the question is whether the [actor] should have foreseen in the abstract, in a general way, the injurious consequences of [his] act.'" Id. (quoting Hobby Shops, Inc. v. Drudy, 161 Ind. App. 699, 317 N.E.2d 473, 478 (1974)). And as our supreme court stated in Funston, there can be multiple proximate causes of a resulting event. 849 N.E.2d at 600. Proof of proximate cause requires only that a plaintiff's negligence be "a" proximate cause, that is, one of the proximate causes. Id.

Here, again, Whitmore had assessed the situation before he sat down on the bus and had perceived his assailant to be a "tough guy" and a "bully." Yet Whitmore chose to sit down next to him and, after the man had conveyed a clear threat to Whitmore, Whitmore told the man that he was "not scared" of him. Appellant's App. at 81. While Whitmore did not throw the first punch, he was pugnacious, and his verbal taunt led directly to the fight that ensued. Whitmore's provocation easily meets the "slight degree of negligence" test followed in Funston. 849 N.E.2d at 598. Thus, I would hold that Whitmore reasonably should have foreseen that his taunt directed at the already agitated

12

man on the bus was an invitation and precursor to the physical altercation that ensued as a natural and probable consequence of his own behavior.

To be sure, had Whitmore sued a private entity, the question of his contributory negligence would be an obvious question of fact precluding summary judgment. But Whitmore is suing a governmental entity. Our supreme court in Funston held that a plaintiff's conduct need only demonstrate "some degree" of negligence to bar his claim against a governmental entity, and we are bound to follow that clear precedent. See 849 N.E.2d at 600. Again, in Funston the court held that leaning backwards from a set of bleachers and falling down is enough to bar a suit against the government on grounds of contributory negligence. Id. If that is so, then there is no doubt that Whitmore's claim is likewise barred.